[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 425.]

THE STATE OF OHIO, APPELLANT, *v*. GUSTAFSON, APPELLEE.

THE STATE OF OHIO, APPELLEE, *v*. MILLER ET AL., APPELLANTS.

[Cite as *State v. Gustafson*, 1996-Ohio-299.]

*Motor vehicles—Driving while intoxicated—License suspended administratively, pursuant to R.C. 4511.191, subsequent to arrest for violation of R.C. 4511.19—Subsequent prosecution of criminal drunk driving not precluded by Double Jepardy Clauses of Ohio and United States Constitutions.*

1. The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution do not preclude criminal prosecution and trial of motorists for driving in violation of R.C. 4511.19 based upon, and subsequent to, the imposition of an administrative license suspension pursuant to R.C. 4511.191.

2. An administrative license suspension imposed pursuant to R.C. 4511.191, and a criminal driving-under-the-influence prosecution for violation of R.C. 4511.19, arising out of the same arrest, constitute separate proceedings for double jeopardy purposes.

3. For purposes of determining the protection afforded by the Double Jeopardy Clauses of the United States and Ohio Constitutions, an administrative license suspension imposed pursuant to R.C. 4511.191 ceases to be remedial and becomes punitive in nature to the extent the suspension continues subsequent to adjudication and sentencing for violation of R.C. 4511.19.

4. Because an administrative license suspension loses its remedial character upon judicial adjudication and sentencing for violation of R.C. 4511.19, the Double Jeopardy Clauses of the United States and Ohio Constitutions preclude continued recognition of an administrative license suspension following

judicial imposition of criminal penalties for driving while under the influence of intoxicating drugs, including alcohol.

5. A court has judicial power pursuant to Sections 1 and 4, Article IV of the Ohio Constitution to order the termination of an administrative license suspension at the time of criminal sentencing for violation of R.C. 4511.19, in that continued recognition of the administrative license suspension would result in an unconstitutional application of R.C. 4511.191 to the criminal offender.

(Nos. 95-1377 and 95-1466—Submitted February 7, 1996—Decided July 30, 1996.)

CERTIFIED by and APPEAL from the Court of Appeals for Mahoning County, No. 94 C.A. 232.

(Nos. 95-1271, 95-1303, 95-1304, 95-1305 and 95-1307—Submitted February 7, 1996—Decided 1996.).

APPEALS from the Court of Appeals for Auglaize County, Nos. 2-94-32, 2-95-3, 2-95-6, 2-95-4, 2-95-7.

_____

{¶ 1} Before the court are consolidated causes presenting issues concerning application of the Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution to proceedings instituted following the arrest of drivers for alleged violation of Ohio's criminal drunk driving law, R.C. 4511.19. A summary of the facts of these causes follows:

{¶ 2} *Case No. 95-1377.* At 12:15 a.m. on November 27, 1993, Robert D. Gustafson Jr. was arrested and charged with a speeding violation and violations of R.C. 4511.19(A)(1) and (3), which prohibits the driving of vehicles upon Ohio's public highways while under the influence of intoxicating substances, including alcohol ("DUI"). The DUI charge was Gustafson's first alcohol- or drug-related driving offense during the preceding five-year period.

{¶ 3} Gustafson consented to a breath-alcohol test, and tested above statutory DUI limits at .115. Pursuant to R.C. 4511.191, the arresting officer immediately

seized Gustafson's driver's license, and processed the necessary report to complete the administrative license suspension ("ALS") of Gustafson's license. By law, the duration of Gustafson's ALS, as a first offender who had failed a breath-alcohol test at the time of arrest, was ninety days. R.C. 4511.191(F)(1). At his arraignment on November 30, 1993, Gustafson waived the right to appeal the ALS provided him by R.C. 4511.191(H)(I). Gustafson further waived application of Ohio's speedy trial statutes to his criminal charges.

{¶ 4} Although the ninety-day ALS period presumably expired at the end of February 1994, the record before us fails to disclose whether Gustafson subsequently secured his license, and if so, when. Nevertheless, on October 14, 1994 Gustafson filed a motion to dismiss the criminal DUI charge which remained, claiming that continued prosecution of that criminal charge would violate his constitutional right pursuant to the Eighth Amendment to be free from twice being placed in jeopardy. The trial court granted the motion. The Seventh District Court of Appeals affirmed dismissal of the criminal DUI charge on double jeopardy grounds.

{¶ 5} *Case No. 95-1271.* At 1:08 a.m. on March 26, 1994, Fred W. Miller, Sr. was arrested and issued three traffic tickets. Miller was charged with a speeding violation, a violation of R.C. 4511.19(A)(1) (DUI), and violation of R.C. 4511.19(A)(3) (driving with a prohibited level of alcohol as measured by breath). Miller consented to a breath-alcohol test, and tested at .166. Miller had twice before during the preceding five-year period been convicted of a DUI offense. The arresting officer imposed an ALS pursuant to R.C. 4511.191, and seized Miller's license. By law, the duration of Miller's ALS, as a third-time offender who had failed a breath-alcohol test at the time of arrest, was two years, *i.e.*, until March 25, 1996. R.C. 4511.191(F)(3).

{¶ 6} At his arraignment on March 31, 1994, Miller appealed the ALS pursuant to R.C. 4511.191(H)(1). On April 1, 1994, Miller requested continuance of the ALS hearing.

{¶ 7} On July 14, 1994, Miller entered a plea of no contest to the charge of violation of R.C. 4511.19(A)(3), and a judgment of conviction was entered on that charge. The speeding charge and the R.C. 4511.19(A)(1) DUI charge were dismissed.

{¶ 8} On September 13, 1994 Miller filed a motion seeking to reverse the judgment of conviction and to bar the imposition of criminal penalties, claiming further sentencing would violate double jeopardy principles. The trial court overruled the motion.

{¶ 9} Miller was thereafter sentenced to one year in jail and a fine of $500. The court ordered all but thirty days of the jail sentence to be suspended conditioned on compliance with imposed terms of probation. In addition, Miller's vehicle was ordered immobilized for one hundred eighty days retroactive to the date of arrest. The ALS was ordered terminated, and, in consequence of his conviction, the court ordered Miller's license suspended for ten years, retroactive to the date of arrest, as authorized by R.C. 4507.16.

{¶ 10} The Third District Court of Appeals affirmed the conviction and sentence imposed by the trial court.

{¶ 11} *Case No. 95-1303*. At 12:45 a.m. on September 10, 1994, Michael T. Smith was arrested and issued three traffic tickets. Smith was charged with a violation of R.C. 4511.19(A)(1) (DUI), violation of R.C. 4511.19(A)(3) (driving with a prohibited level of breath-alcohol), and violation of R.C. 4511.19(A)(4) (driving with a prohibited level of urine-alcohol). Smith's breath-alcohol test registered .146. The DUI charge was Smith's first offense within the preceding five-year period. The arresting officer imposed an ALS pursuant to R.C. 4511.191, and seized Smith's license. By law, the duration of Smith's ALS, as a first offender who had failed a breath-alcohol test at the time of arrest, was ninety days. R.C. 4511.191(F)(1).

{¶ 12} At his arraignment Smith appealed the ALS. Thereafter, Smith requested continuance of the ALS hearing. Smith was granted limited driving privileges enabling him to drive to and from work and for household needs.

{¶ 13} On January 18, 1995, defendant moved to dismiss the criminal DUI charges pending against him on double jeopardy grounds. Upon denial of his motion, Smith entered a plea of no contest to the charge of violation of R.C. 4511.19(A)(3), and a judgment of conviction was entered on that charge. The remaining charges were dismissed.

{¶ 14} Smith was sentenced to three days in jail and a fine of $500. The court ordered the jail sentence and $300 of the fine to be suspended conditioned on compliance with imposed terms of probation. The ALS was ordered terminated, but the court, pursuant to R.C. 4507.16, ordered Smith's driver's license suspended for six months retroactive to the date of arrest. Work and household-need -driving privileges were continued.

{¶ 15} The Third District Court of Appeals affirmed the conviction and sentence imposed by the trial court.

{¶ 16} *Case No. 95-1304*. On May 3, 1994, James L. Brown was arrested and issued two traffic tickets. Brown was charged with violations of R.C. 4511.19(A)(1) (DUI) and 4511.19(A)(3) (driving with a prohibited level of breath alcohol). Brown's breath-alcohol tests registered .186. The DUI charge was Brown's third offense within the preceding five-year period. The arresting officer seized Brown's license pursuant to R.C. 4511.191. By law, the duration of Brown's ALS, as a third-time offender who had failed a breath-alcohol test at the time of arrest, was two years, *i.e.*, until May 2, 1996. R.C. 4511.191(F)(3).

{¶ 17} Brown appealed the ALS, and requested a continuance of the ALS hearing.

{¶ 18} Brown filed a motion to dismiss the criminal DUI charges pending against him on double jeopardy grounds, which was denied. Upon denial of his motion, Brown entered a plea of no contest to the charge of violation of R.C. 4511.19(A)(3), and a judgment of conviction was entered on that charge. The remaining charge was dismissed.

**{¶ 19}** Brown was sentenced to one year in jail and a fine of $500. His driver's license was judicially suspended for ten years, retroactive to the date of arrest. His vehicle was ordered immobilized for six months, retroactive to the date of arrest. The ALS was ordered terminated. Matters of probation were taken under advisement.

**{¶ 20}** The Third District Court of Appeals affirmed the conviction and sentence imposed by the trial court.

**{¶ 21}** *Case No. 95-1305*. On June 17, 1994, Kenneth L. Roth was arrested and issued two traffic tickets. Roth was charged with violations of R.C. 4511.19(A)(1) (DUI) and 4511.19(A)(2) (driving with a prohibited level of blood alcohol). It appears Roth refused to take a chemical breath test of his breath. The arresting officer imposed an ALS pursuant to R.C. 4511.191, and seized Roth's license.

**{¶ 22}** The DUI charge was Roth's third DUI-related offense within the preceding five-year period. The record does not show, however, whether Roth had refused chemical testing in connection with his previous convictions. By law, the duration of Roth's ALS, had he in fact refused on two prior occasions to take a chemical test at the time of the DUI arrest, would be three years, *i.e.*, until June 16, 1997. R.C. 4511.191(E)(1)(c). If, however, his prior DUI offenses had not been associated with chemical-test refusals, the duration of his ALS, by law, would be one year. R.C. 4511.191(E)(1)(a). In addition, Roth's vehicle was impounded by the arresting officer.

**{¶ 23}** Roth appealed the ALS, and sought a continuance of the ALS hearing. In addition, Roth filed a motion to dismiss the criminal DUI charges pending against him on double jeopardy grounds. Upon denial of his motion, Roth entered a plea of no contest to the charge of violation of R.C. 4511.19(A)(1), and a judgment of conviction was entered on that charge. The remaining charge was dismissed.

**{¶ 24}** Roth was sentenced to one year in jail and a fine of $1,000. His driver's license was judicially suspended for ten years, retroactive to the date of arrest, as authorized by R.C. 4507.16. His vehicle was ordered immobilized for six months,

retroactive to the date of arrest. The court ordered termination of the ALS, which had been imposed based on Roth's refusal to take a chemical test. Matters of probation were taken under advisement.

{¶ 25} The Third District Court of Appeals affirmed the conviction and sentence imposed by the trial court.

{¶ 26} *Case No. 95-1307*. On September 4, 1994, Sally A. Bayman was arrested and charged with violations of R.C. 4511.19(A)(I) (DUI) and 4507.02(D)(2) (driving while under a previously imposed license suspension). Bayman refused to take a chemical test of her breath. The DUI charge was Bayman's third offense within the preceding five-year period. Her vehicle was impounded by the arresting officer. The arresting officer imposed an ALS pursuant to R.C. 4511.191, and seized Bayman's license. Depending on whether her prior DUI offenses had been associated with a chemical-test refusal, the ALS would have been for either one year or three years. R.C. 4511.191(E)(1)(a); 4511.191(E)(1)(c).

{¶ 27} At her arraignment Bayman appealed the ALS. Later, Bayman requested a continuance of the ALS hearing. Thereafter, Bayman filed a motion to dismiss the criminal DUI charges pending against her on double jeopardy grounds, which was denied. Upon denial of her motion, Bayman entered a plea of no contest to both charges, and judgments of conviction were entered.

{¶ 28} For the DUI violation, Bayman was sentenced one year in jail and a fine of $500. Her vehicle was ordered immobilized for six months, retroactive to the date of arrest. The court ordered all but fifteen days of the jail sentence to be suspended, conditioned on compliance with imposed terms of probation. For driving while under a previous OMVI license suspension, Bayman was sentenced to six months in jail, concurrent with the jail sentence imposed for the DUI violation, and an additional $250 fine. The court further order Bayman's driver's license suspended for ten years, retroactive to the date of arrest, as authorized by R.C. 4507.16. The court issued no further order purporting to affect the ALS.

{¶ 29} The Third District Court of Appeals affirmed the conviction and sentence imposed by the trial court.

{¶ 30} The above causes are now before this court on consolidated appeals as of right. In addition, the Seventh District Court of Appeals found its judgment in *Gustafson* to conflict with the decision in the *Miller* case, and entered an order certifying a conflict. That cause is now also before this court upon our determination that a conflict exists (case No. 95-1377).

_____

*James A. Philomena*, Mahoning County Prosecuting Attorney, *Michele G. Cerni*, Assistant Prosecuting Attorney; *Betty D. Montgomery*, Attorney General, *Jeffrey S. Sutton*, State Solicitor, *Susan E. Ashbrook* and *Andrew S. Bergman*, Assistant Attorneys General, for appellant in case Nos. 95-1377 and 95-1466.

*Newman, Olson & Kerr* and *Martin S. Delahunty III*, for appellee in case Nos. 95-1377 and 95-1466.

*W. Andrew Hasselbach*, urging affirmance for *amicus curiae*, Ohio Association of Criminal Defense Lawyers, in case Nos. 95-1377 and 95-1466.

*Henry M. Jasny*, *pro hac vice*, urging reversal for *amici curiae*, Advocates for Highway and Auto Safety, and Mothers Against Drunk Driving, National Headquarters, in case Nos. 95-1377 and 95-1466.

*Baker & Hostetler* and *Richard W. Siehl*, urging reversal for *amicus curiae*, Mothers Against Drunk Driving, State of Ohio, in case Nos. 95-1377 and 95-1466.

*Baker & Hostetler* and *William W. Falsgraf*, urging reversal for *amicus curiae*, American Alliance for Rights and Responsibilities, in case Nos. 95-1377 and 95-1466.

*Michele McDowell Fields*, *pro hac vice*, urging reversal for *amicus curiae*, Insurance Institute for Highway Safety, in case Nos. 95-1377 and 95-1466.

*Wilson Law*, *Eric J. Wilson* and *Gregory Wilson*, for appellants in case Nos. 95-1271, 95-1303, 95-1304, 95-1305 and 95-1307.

*Garrett T. Gall*, Auglaize County Prosecuting Attorney, and *David M. Busick*, Assistant Prosecuting Attorney; *Betty D. Montgomery*, Attorney General, *Jeffrey S. Sutton* and *Susan E. Ashbrook*, Assistant Attorneys General, for appellee in case Nos. 95-1271, 95-1303, 95-1304, 95-1305, and 95-1307.

---

**MOYER, C.J.**

{¶ 31} Before this court stand six Ohio drivers whose licenses were suspended administratively, pursuant to R.C. 4511.191, subsequent to arrest for violation of R.C. 4511.19. The legal issue presented by their appeals is whether the administrative suspension of their licenses under R.C. 4511.191 precludes subsequent prosecution of criminal drunk driving charges pursuant to the Double Jeopardy Clauses of the Ohio and United States Constitutions. Of these six drivers, four (Gustafson, Miller, Brown and Smith) submitted to chemical tests upon the request of the arresting officer, while two (Roth and Bayman) refused to take such a test.

{¶ 32} We begin our analysis by setting forth a simplified statement of the procedures now governing administrative license suspensions in Ohio. In 1993 the Ohio General Assembly enacted comprehensive legislation[1] designed to combat the devastating problems associated with drunk driving on Ohio highways. Included in the legislation were revisions to Ohio's implied consent statute, R.C. 4511.191, authorizing, for the first time, immediate "on-the-spot" suspensions of driving privileges at the time of a DUI arrest. R.C. 4511.191(D). Acting "[o]n behalf of the registrar" of the bureau of motor vehicles ("BMV"), an arresting officer now is required to implement an administrative license suspension as to a motorist who either (1) refuses, upon the officer's request, to submit to a chemical test to determine blood, breath or urine alcohol content, or (2) takes the test, but "fails" it, *i.e.*, registers a blood-

---

1. See 144 Ohio Laws, Part I, 1566 (effective Sept. 1, 1993); 145 Ohio Laws Part I, 479 (effective Sept. 1, 1993).

, breath- or urine-alcohol content exceeding statutory limits. *Id.* Duration of the ALS is established by R.C. 4511.191(E) and (F), and ranges from ninety days (imposed upon a first offender who "fails" a chemical test) to five years (imposed upon an arrestee who refuses testing, and has refused chemical testing on three or more prior occasions in the preceding five years).

{¶ 33} A driver may appeal the administrative license suspension at an initial appearance before the criminal court hearing the DUI charge, which, unless continued, occurs within five days of arrest. R.C. 4511.191(G). Appeal of an ALS does not, however, stay or otherwise affect the running of the suspension. R.C. 4511.191(H).

{¶ 34} Following the prescribed term of the suspension, the driver may request the BMV to return or reissue the suspended license, which the BMV must do upon payment of a $250 reinstatement fee and proof of compliance with Ohio's financial responsibility requirements. R.C. 4511.191(L).

I

Double Jeopardy Analysis

{¶ 35} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that "[n]o person shall *** be subject for the same offense to be twice put in jeopardy of life or limb," and is applicable to the states through the Fourteenth Amendment. *Benton v. Maryland* (1969), 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707; *State v. Tolbert* (1991), 60 Ohio St.3d 89, 90, 573 N.E.2d 617, 619. Similarly, Section 10, Article I of the Ohio Constitution provides that "[n]o person shall be twice put in jeopardy for the same offense." Ohio courts have historically treated the protections afforded by the Double Jeopardy Clauses of the Ohio Constitution and the United States Constitution as coextensive. See *State v. Konicek* (1984) 16 Ohio App.3d 17, 17-18, 16 OBR 18, 18-19, 474 N.E.2d 363, 364; *State v. Moss* (1982), 69 Ohio St. 2d 515, 517, 23 O.O.3d 447, 448, 433 N.E.2d 181, 184; *State v. Royster* (1982), 3 Ohio App. 3d 442, 443, 3 OBR 521, 522, 446 N.E.2d 190, 192. We therefore proceed based on the premise that the Double Jeopardy Clause of

each Constitution prohibits (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *United States v. Halper* (1989), 490 U.S. 435, 440, 109 S.Ct. 1892, 1897 104 L.Ed.2d 487, 496, citing *North Carolina v. Pearce* (1969), 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 644-665.

{¶ 36} Prior to the decisions of the United States Supreme Court in *Halper*, courts uniformly accepted the principle that sanctions imposed pursuant to "civil" or "administrative" proceedings did not trigger the Double Jeopardy Clause so as to preclude either subsequent criminal prosecutions or criminal punishments. *Helvering v. Mitchell* (1938), 303 U.S. 391, 82 L. Ed. 917, 58 S. Ct. 630, 82 L.Ed. 917; *United States v. Ward* (1980), 448 U.S. 242, 248, 100 S. Ct. 2636, 2641, 65 L.Ed.2d 742, 749. In *Halper*, however, the court recognized that a line could be crossed at which civil damage recoveries could become "punishments" for double jeopardy purposes.

{¶ 37} In *Halper*, the manager of a medical laboratory Medicaid provider was indicted, convicted, and sentenced on sixty-five criminal fraud counts. Subsequently, the federal government brought suit pursuant to the False Claims Act (Sections 3729-2731, Title 31, U.S. Code), claiming it was entitled to judgment for more than $130,000 in "civil penalties," that sum representing the statutorily established maximum penalty of $2,000 on each of the sixty-five counts. The government's actual losses, however, totaled only $580, plus the costs of investigating and prosecuting the case.

{¶ 38} The *Halper* court recognized that both criminal and civil proceedings may advance punitive as well as remedial goals, and held that "in determining whether a particular civil sanction constitutes criminal punishment, it is the purposes actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated." *Id*. at 447, 109 S.Ct. at 1901, 104 L.Ed.2d at 501, fn. 7. The court cited *Kennedy v. Mendoza-Martinez* (1963), 372 U.S. 144, 168, 83 S.Ct. 554, 567, 9 L.Ed.2d 644, 660-661, in recognizing that a sanction

appearing excessive in relation to its nonpunitive purpose might well be deemed "punishment." This implied that disproportionality between the magnitude of the sanction and the harm caused by the underlying conduct was critical. The court remanded the case for the trial court to determine the maximum fine which could be imposed consistent with a remedial, rather than punitive, purpose, holding that "under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not *fairly be characterized as remedial*, but only as a deterrent or retribution." (Emphasis added.) *Id.* at 448-449, 109 S.Ct. at 1902, 104 L.Ed.2d at 502. While recognizing that the trial court's inquiry on remand would "not be an exact pursuit," the court left it to the lower court to determine "the size of the civil sanction the Government may receive without crossing the line between remedy and punishment." *Id.* at 449-450, 109 S.Ct. at 1902, 104 L.Ed.2d at 502-503.

{¶ 39} More recently, the United States Supreme Court again considered the issue of "criminal punishment" vis-a-vis "civil sanction" in *Austin v. United States* (1993), 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488. *Austin* did not involve alleged violation of the Double Jeopardy Clause, but rather presented a challenge to drug-related forfeitures of property based on the Excessive Fines Clause of the Eighth Amendment to the United States Constitution. Nevertheless, the court found its prior analysis in *Halper* to be helpful in determining whether the forfeiture of property constituted "punishment" for purposes of the Excessive Fines Clause. The *Austin* court concluded that forfeiture proceedings "historically have been understood, at least in part, as punishment," *id*. at ____, 113 S.Ct. at 2810, 125 L.Ed.2d at 503, and that forfeitures constituted fines, *i.e.*, "'payment to a sovereign as punishment for some offense,'" *id*. at ___, 113 S.Ct. at 2812, 125 L.Ed.2d at 505. The case was remanded to the trial court for determination of whether the forfeiture at issue was excessive in relation to the offense committed, or, alternatively, represented a fine which fell within constitutional, nonexcessive, limits. *Id.*

**{¶ 40}** In *Dept. of Revenue of Montana v. Kurth Ranch* (1994), 511 U.S.____, 114 S.Ct.1937, 128 L.Ed.2d 767, the court again, as in *Halper*, was called upon to determine whether a particular sanction constituted a "punishment" for purposes of the Double Jeopardy Clause so as to preclude subsequent imposition of additional "punishment." At issue in *Kurth Ranch* was a Montana tax assessed on the possession and storage of dangerous drugs. Members of the Kurth family were convicted of criminal drug law violations and sentenced to prison terms. The state of Montana then separately assessed a tax of nearly $900,000 on the Kurth family, and thereafter pursued its claim in federal bankruptcy proceedings. The United States Supreme Court affirmed lower court findings denying recognition of Montana's claim, noting that "'there comes a time in the extension of the penalizing features of the so-called tax when it loses its character as such and becomes a mere penalty with the characteristics of regulation and punishment.'" *Id.*, 511 U.S. at ___, 114 S.Ct. at 1946, 128 L.Ed.2d at 778. It therefore held that collection from the Kurths of the assessed tax of nearly $900,000 was precluded as violative of the Double Jeopardy Clause's prohibition against imposition of successive punishments in separate proceedings.

**{¶ 41}** To summarize the holdings of the *Halper-Austin-Kurth Ranch* trilogy, in *Halper* the Supreme Court held that "civil" damage assessments can cross a line beyond which the assessments become nonremedial and a punishment for double jeopardy purposes; in *Austin* the court held that "civil" forfeitures can cross a line beyond which that sanction becomes nonremedial and a punishment for Eighth Amendment purposes; and in *Kurth Ranch* the court held that "civil" taxes can cross a line beyond which they lose their character as true taxes and become a punishment for double jeopardy purposes.[2]

---

2. Subsequent to oral argument and submission of these causes for our determination, the United States Supreme Court decided *United States v. Ursery* (1996), 518 U.S.___, 116 S.Ct. 2135, 135 L.Ed. 2d 249,

**{¶ 42}** We proceed in accordance with established double jeopardy principles to analyze Ohio's statutory administrative license suspension framework to determine (1) whether an administrative license suspension and a criminal DUI prosecution constitute "multiple prosecutions," (2) whether an ALS and a criminal prosecution for driving under the influence of intoxicants constitute separate proceedings based on the same conduct, and (3) whether "multiple punishments" are imposed where judicial sentencing following conviction of driving while under the influence as well as a statutory license suspension are imposed.

A

"Multiple Prosecution" Analysis

**{¶ 43}** "The risk to which the [Double Jeopardy] Clause refers is not present in proceedings that are not 'essentially criminal.'" *Breed v. Jones* (1975), 421 U.S. 519, 528, 95 S. Ct. 1779, 1785, 44 L.Ed.2d 346, 354-355. Nor does the Double Jeopardy Clause preclude criminal prosecution based on the fact that civil administrative proceedings based on the same conduct have previously been initiated. *Helvering*, *supra*; *Ward*, *supra*; *United States v. One Assortment of 89 Firearms*

---

64 U.S.L.W. 4565, 1996 WL 340815. In *Ursery*, the court discussed *Halper* and its progeny, *Austin, supra,* and *Kurth Ranch*, *supra*.

 In *Ursery,* eight members of the court agreed that, prior to *Halper*, statutory civil *in rem* forfeitures had not been deemed to implicate Double Jeopardy Clause protection, such forfeitures having historically been characterized as "remedial civil sanction[s], distinct from potentially punitive in personam civil penalties such as fines." *Id*. at ____, 116 S.Ct. at 2142, 135 L.Ed.2d at 562. The *Ursery* court rejected the contention that forfeiture to the government of property used in connection with criminal activities necessarily constitutes a punishment of the former owner for Double Jeopardy Clause purposes. Although the court recognized that civil forfeitures are not *per se* exempt from the scope of the Double Jeopardy Clause, *id*., at 116 S.Ct. at 2148, 135 L.Ed.2d at 569, fn. 3, it nevertheless held that the civil forfeitures in the cases before it did not constitute punishments for double jeopardy purposes. *Id*.

 *Ursery* does not control disposition of the causes before us, which do not involve *in rem* civil forfeitures, but rather administrative suspensions of drivers' licenses. It remains to be seen whether the United States Supreme Court will, in future cases, confine application of *Ursery* solely to civil *in rem* forfeiture proceedings, or may, conversely, apply it more broadly, thereby minimizing the importance of *Halper* and its progeny as precedent. In either event, we deem our resolution of the causes before us to be independently supported by the Double Jeopardy Clause of the Ohio Constitution.

(1984), 465 U.S. 354, 359, 104 S. Ct. 1099, 1103, 79 L.Ed.2d 361, 366; *Dept. of Natural Resources v. Prescott*, (1989), 42 Ohio St.3d 65, 68, 537 N.E.2d 204, 207. See, also, *State v. Casalicchio* (1991), 58 Ohio St.3d 178, 569 N.E.2d 916; 3 LaFave & Israel, Criminal Procedure, (1984), 61-62, Section 24.1(b).

{¶ 44} Jeopardy attaches, so as to preclude subsequent criminal proceedings, at different points in time depending on the nature of the proceeding in question. Where a criminal defendant has invoked the right to trial by jury, jeopardy does not attach so as to preclude subsequent criminal proceedings until the jury is impaneled and sworn. *Crist v. Bretz* (1978), 437 U.S. 28, 57 L. Ed. 2d 24, 98 S. Ct. 2156, 57 L.Ed.2d 24. Similarly, jeopardy does not attach in a criminal bench trial until the court begins to hear evidence. S*erfass v. United States* (1975), 420 U.S. 377, 95 S. Ct. 1055, 43 L.Ed.2d 265. In other situations, jeopardy based on having undergone an initial criminal trial attaches after acquittal or conviction. *Brown v. Ohio* (1977), 432 U.S. 161, 165, 97 S. Ct. 2221, 2225, 53 L.Ed.2d 187, 194.

{¶ 45} In sum, insofar as the Double Jeopardy Clause precludes successive criminal prosecutions, the proscription is against a *second criminal trial* after jeopardy has attached in a *first criminal trial*.

{¶ 46} We do not read the *Halper-Austin-Kurth Ranch* trilogy as altering these well-settled principles, nor do we believe that an administrative license suspension constitutes a proceeding to which jeopardy attaches so as to preclude subsequent criminal prosecution for drunk driving.

{¶ 47} Criminal prosecution after an immediate ALS does not result in the defendant being subjected to a second "trial," because he has not undergone a first "trial." The immediate deprivation of a driver's license through an automatic license suspension as provided by R.C. 4511.191 is accomplished through administrative proceedings of a summary nature conducted by the arresting law enforcement officer. It does not result in either a "conviction" or an "acquittal," nor can it reasonably be construed as having subjected the motorist to the stresses, embarrassment, and

expense associated with a criminal trial. Cf. *United States v. Martin Linen Supply Co.* (1977), 430 U.S. 564, 569, 97 S. Ct. 1349, 1353, 51 L. Ed. 2d 642, 649, quoting *Green v. United States* (1957), 355 U.S. 184, 187-188, 78 S. Ct. 221, 223, 2 L. Ed. 2d 199, 204. The administrative suspension of one's driver's license is simply not the type of proceeding to which double jeopardy protection attaches so as to preclude a subsequent criminal prosecution. Accord *State v. Toyomura* (1995), 80 Hawaii 8, ___, 904 P.2d 893, 901, 907-908 (A proceeding similar in nature to an ALS appeal "does not bar a subsequent criminal prosecution, whether the *** proceeding 'ended in [the motorist's] favor' or resulted in an 'acquittal.'"); *State v. Jones* (1995), 340 Md. 235, 242, 666 A.2d 128, 131 ("since neither party contends that the administrative suspension of Jones's license constituted a 'prosecution,' the imposition of criminal sanctions against Jones for driving while intoxicated violates the Double Jeopardy Clause only if it constitutes a second punishment."); *Taylor v. Sherrill* (1991), 169 Ariz. 335, 819 P.2d 921, (civil traffic infraction proceedings did not bar subsequent criminal prosecution); *Purcell v. United States* (D.C. App. 1991), 594 A.2d 527. See, also, LaFave & Israel, *supra*, at Section 24.1(b).

{¶ 48} We agree with the analyses and conclusions of those courts. Double jeopardy prohibitions do not preclude the state from trying a defendant criminally for violation of R.C. 4511.19 after an administrative license suspension imposed pursuant to R.C. 4511.191. The state retains its right to seek criminal conviction through criminal prosecution.

{¶ 49} Our conclusion is supported by the United States Supreme Court's ultimate disposition of *Halper*. Although recognizing that prior criminal actions had resulted in convictions, the *Halper* court found no fault with the initiation of subsequent civil proceedings or with the imposition of both civil and criminal sanctions. Rather, the court remanded the cause for further proceedings to assess a civil sanction which did not "cross the line" to punishment. Similarly, in *Austin*, the court acknowledged the legitimacy of civil forfeiture proceedings brought subsequent

to a prior criminal conviction obtained in state court, and remanded the case for lower court analysis as to whether punitive fines imposed in the civil proceedings were excessive, thereby violating the Excessive Fines Clause of the Eighth Amendment. *Halper* and its progeny are instructive not regarding the prohibition of the Double Jeopardy Clause against multiple *prosecutions*, but rather as to its prohibition against multiple *punishments*. As one commentator has noted:

"[U]nder the Supreme Court's holding in *Halper*, the government is entitled to convict and punish an individual in a criminal prosecution and also impose a penalty upon her in a separate civil proceeding, even though both sanctions are based upon the same conduct. *** [I]f a civil penalty that constitutes 'punishment' for double jeopardy purposes is held to bar the government from subsequently prosecuting the individual criminally for the same conduct, the government will be deprived of the opportunity to obtain a criminal conviction and to impose the full range of permissible sanctions, both criminal and civil, upon the individual. Such a result appears to be inconsistent with *Halper*." Rudstein, Civil Penalties and Multiple Punishment Under the Double Jeopardy Clause: Some Unanswered Questions (1993), 46 Okla.L.Rev. 587, 602-603.

{¶ 50} We therefore hold that, where an administrative license suspension occurs at the time of arrest, subsequent motions to dismiss criminal DUI proceedings based on double jeopardy principles should be overruled. The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Section 10, Article I, of the Ohio Constitution do not preclude criminal prosecution and trial of motorists for driving in violation of R.C. 4511.19 based upon, and subsequent to, the imposition of an administrative license suspension pursuant to R.C. 4511.191.

B

"Separate Proceedings" Analysis

{¶ 51} The Double Jeopardy Clause affords protection not only from multiple prosecutions, but also from imposition of multiple punishments in separate and

successive proceedings. If pursued in a single proceeding, however, multiple punishment may constitutionally be imposed, and the state may obtain the full range of both civil and criminal penalties. *Kurth Ranch*, 511 U.S. at ___, 114 S.Ct. at 1945, 128 L.Ed.2d at 778; *Halper*, 490 U.S. at 450, 109 S.Ct. at 1903, 104 L.Ed.2d at 503. The state argues that the double jeopardy arguments made by the motorists before us should be resolved against them in that an ALS and a criminal prosecution occur in the same, rather than separate, proceedings. The state contends that it is irrelevant whether an ALS constitutes "punishment," as subsequent criminal punishment could nevertheless be imposed, because it is imposed in the same proceeding. We do not agree.

{¶ 52} By the express terms of R.C. 4511.191, an immediate and automatic license suspension is accomplished through "administrative proceedings" of a summary nature, *i.e.*, the arresting officer, acting as the agent of the BMV, demands and confiscates the license "on the spot." These proceedings are not conducted in the criminal court which thereafter determines matters of criminal guilt or innocence of the DUI charge. Rather, these proceedings are conducted initially by an arresting officer at public roadsides or in police stations, and processed thereafter not in any judicial forum, but within the bureaucracy of the BMV. They are intended to remove from the highway those motorists who are a threat to themselves and to others, as determined by their refusal to expose themselves to a test for alcohol content, or as indicated by their tested alcohol level. By law, the suspension of the driver's license becomes an administrative *fait accompli* at the time the license is physically seized by the officer.

{¶ 53} The fact that the General Assembly has provided an opportunity for a post-suspension administrative appeal of the ALS in the court in which the DUI charges are filed does not change this conclusion. Although the administrative *appeal* of the ALS may (but need not) be presided over by the same judicial officer as presides over the criminal DUI case, that circumstance does not consolidate the administrative

license *suspension* and the DUI prosecution into the "same proceeding" for double jeopardy purposes.

{¶ 54} Both the Third and the Seventh District Courts of Appeals held in the causes *sub judice* that the ALS and the criminal proceedings take place separately for double jeopardy purposes. We concur in their analyses of this issue. We hold that an ALS imposed pursuant to R.C. 4511.191, and a criminal DUI prosecution for violation of R.C. 4511.19 arising out of the same arrest constitute separate proceedings for double jeopardy purposes.

C

"Multiple Punishment" Analysis

{¶ 55} Because we hold (1) that the state may criminally prosecute DUI charges subsequent to an ALS, and (2) that the administrative license suspension is imposed in proceedings separate from the criminal prosecution, the Double Jeopardy Clause is applicable in Ohio ALS cases, if at all, based on the third prohibition described in *Halper*, *i.e*. the prohibition against multiple punishments for the same offense.

{¶ 56} We first determine that an administrative license suspension, whether based on a test failure or a test refusal, is a sanction based on the same offense or conduct as is subsequent prosecution of a charge of violating R.C. 4511.19, *i.e.,* driving while intoxicated.

{¶ 57} We reject the argument that a refusal ALS is based on a different offense from that at issue in a subsequent DUI prosecution alleging violation of R.C. 4511.19(A)(1). Whether a driver ultimately is charged with R.C. 4511.19 (A)(1) (which requires proof of impairment) or 4511.19(A)(2), (3), or (4) (which require proof of driving with blood-, breath-, or urine-alcohol content higher than allowed by law), the conduct or offense that all administrative license suspensions and all R.C. 4511.19 prosecutions are intended to combat is *drunken driving.*

**{¶ 58}** A person arrested for DUI may be proved guilty of criminal drunken driving in either of two ways: he may be convicted based upon proof that his driving had become actually impaired as demonstrated by his conduct, or he may be convicted simply upon introduction of chemical test failures. R.C. 4511.19(A). Where an arrestee refuses to take a chemical test, the state's prosecution may hinge solely on the testimony of the arresting officer or other witnesses, thereby limiting the range of means by which the state may obtain an conviction.

**{¶ 59}** However, the act of refusing a chemical test for alcohol, standing alone, does not constitute a criminal "offense" of any kind. Ohio police officers are not statutorily authorized to randomly demand chemical alcohol testing of Ohio drivers in the absence of an arrest for DUI, and there is no criminal charge which can be lodged for the act of refusing a chemical test. Nor does R.C. 4511.191 authorize imposition of an ALS based solely on a driver's refusal to take a chemical test. Rather, the implied consent statute authorizes a police officer to ask a driver to undergo a chemical test for alcohol *only where the officer has first determined that probable cause exists for arrest for the offense of driving while intoxicated.*

**{¶ 60}** Were it the refusal itself which constituted the conduct for which an ALS is imposed, there would be no logical justification for the statute to authorize termination of a refusal ALS upon the entry of a guilty or not contest plea to DUI. Yet R.C. 4511.191(K) provides for such a termination "if the offense for which the plea is entered *arose from the same incident that led to the suspension or denial*," *i.e.*, a valid, probable cause arrest for DUI. (Emphasis added.)

**{¶ 61}** In short, an R. C. 4511.191 administrative license suspension is inextricably intertwined with, and dependent upon, an arrest for violation of Ohio's DUI statute, R.C. 4511.19. This conclusion results regardless of whether the ALS was issued in connection with a test refusal, or in connection with a test failure. We conclude that both an administrative license suspension and criminal punishments imposed in consequence of a DUI conviction are imposed based on the same conduct

or offense, *i.e.*, driving while intoxicated. See, generally, Kravitz, Ohio's Administrative License Suspension: A Double Jeopardy and Due Process Analysis(1996), 29 Akron Law Review 123.

**{¶ 62}** Pursuant to *Halper* and its progeny, we therefore must determine whether an ALS constitutes a first "punishment" for double jeopardy purposes, so as to preclude imposition of subsequent criminal punishment for violation of Ohio's DUI law, or conversely, may "fairly be characterized as remedial." *Halper*, *supra,* at 449, 109 S.Ct. at 1902, 104 L.Ed.2d at 502.

**{¶ 63}** This court has historically and repeatedly characterized driver's license suspensions imposed pursuant to Ohio's implied consent statutes as being civil in nature and remedial in purpose. *State v. Starnes* (1970), 21 Ohio St.2d 38, 50 O.O.2d 84, 254 N.E.2d 675; *Hoban v. Rice* (1971), 25 Ohio St.2d 111, 54 O.O.3d 254, 267 N.E.2d 311; *Andrews v. Turner* (1977), 52 Ohio St.2d 31, 6 O.O.3d 149, 368 N.E.2d 1253. Our prior law is thus consistent with that in the overwhelming majority of states. See *Luk v. Commonwealth* (1995), 421 Mass. 415, 425, 658 N.E.2d 664, 671-672, at fn. 16 (containing a lengthy compilation of recent ALS double-jeopardy cases finding administrative license suspensions to be non-punitive and remedial in purpose). See, also, *e.g.*, *State v. Savard* (Me. 1995), 659 A.2d 1265; *State v. Maryland* (1995), 666 A.2d 128, 340 Md. 235; *State v. Talavera* (1995), 127 Idaho 700, 905 P.2d 633. Similarly, the United States Supreme Court has recognized that states possess a compelling interest in promptly removing drunken drivers from the road in order to protect public safety. *Mackey v. Montrym* (1978) 443 U.S. 1, 17-18, 61 L.Ed.2d 321, 99 S.Ct. 2612, 2620-2621, 61 L.Ed.2d 321, 334.

**{¶ 64}** Nevertheless, we remain cognizant of the underlying theme of *Halper-Austin-Kurth Ranch* that sanctions which may initially be justified as remedial can simply go too far, to the point that they must be deemed "punishment" for double jeopardy purposes. Our precedent, as well as that of the majority of other states, supports the conclusion that administrative license suspensions are, at least in their

initial application, remedial in purpose and thus do not *ab initio* constitute "punishment" for double jeopardy purposes. Short-term suspensions of a reasonable duration of time may "fairly be characterized as remedial" within the double jeopardy framework established by *Halper*. Such a suspension serves the remedial purpose of providing interim protection of the public during the period of time required to obtain full and fair adjudication of the driver's guilt or innocence of criminal drunk driving.

{¶ 65} However, the 1993 amendments to R.C. 4511.191 extended the duration of administrative license suspensions in particular cases beyond the time within which disposition of an underlying criminal DUI charge could reasonably be expected. For example, the statute provides for an ALS to continue beyond a "not guilty" adjudication on the criminal charge in cases where a suspension is imposed based upon refusal to submit to a chemical test upon the request of an officer. In such cases, "any subsequent finding that the person is not guilty of the [DUI] charge *** does not terminate or otherwise affect the suspension." R.C. 4511.191(H)(2). Similarly, a motorist arrested for DUI who "fails" a chemical test, but later pleads not guilty to the DUI charge, but who is nevertheless convicted, is not entitled to termination of the ALS. In contrast, conviction subsequent to a guilty or no contest plea does entitle the defendant to termination of the ALS. See R.C. 4511.191(G)(1) read *in pari materia* with R.C. 4511.191(H)(2) and (K). These aspects of R.C. 4511.191 weigh in favor of a conclusion that, while the statute in its initial application serves the goal of remediation, it may be applied so as to primarily serve goals of punishment.

{¶ 66} Our interpretation of *Halper, Austin,* and *Kurth Ranch* causes us to conclude that R.C. 4511.191 may, in its application to particular cases, "cross the line" and become excessive in relation to the legitimate nonpunitive, remedial purpose of removing dangerous drivers from the public highways. We observe that an arrest for DUI does not require the conclusion that continued driving by an arrestee, upon obtaining sobriety, constitutes a threat to highway safety. Nevertheless, the General

Assembly has determined that error, if any, in the application of such a presumption as to arrestees must be made on the side of removing potentially dangerous drivers from the highways. A short-term automatic administrative license suspension legitimately serves that remedial goal. However, the need for *administrative* remedial suspension ends at the point where a criminal conviction of drunk driving is obtained, at which time a court has authority to judicially impose a license suspension in accordance with law and the individual circumstances of the defendant before it. R.C. 4507.16.

**{¶ 67}** We have reviewed numerous cases from other jurisdictions in which defendants have challenged drunk driving prosecutions on double jeopardy grounds subsequent to administrative license suspension. Those jurisdictions are nearly uniform in finding the imposed suspensions before them to be "remedial" in nature, so as to satisfy a *Halper* double-jeopardy analysis. However, our review does not disclose a case in which an administrative license suspension statute imposing sanctions as severe as R.C. 4511.191 has withstood a double-jeopardy "punishment" analysis. Rather in the cases we have reviewed,[3] the statutes under consideration have authorized maximum suspension periods of significantly shorter duration than does R.C. 4511.191, generally not exceeding a maximum ALS period of one year.

---

3. See *Leduc v. Commonwealth* (1995), 421 Mass. 433, 657 N.E.2d 755, citing Mass. G.L.c. 90, Section 24(1)(f); *State v. Jones* (1995), 340 Md. 235, 240-241, 666 A.2d 128, 130, citing Section 16-205.1 of the Maryland Transportation Article; *State v. Talavera* (1995), 127 Idaho 700, ___, 905 P. 2d 633, 635, citing I.C. Section 18-8002A; *State ex rel. Schwartz v. Kennedy* (1995), 120 N.M. 619, ___, 904 P.2d 1044, 1055, citing N.M.S.A. 1978, Section 66-8-111; *State v. Mertz* (1995), 258 Kan. 745, 749, 907 P.2d 847, 851, citing K.S.A. 1994 Supp. 8-1014; *Tench v. Commonwealth* (1995), 21 Va.App. 200, 462 S.E.2d 922, citing Va. Code Section 46.2-391.2; *Nebraska v. Hansen* (1996), 249 Neb. 177, 181, 542 N.W.2d 424, 428, citing Neb. R.S. Section 60-6,205(1). Cf. *United States v. Imngren* (D.C. Va. 1995), 914 F.Supp. 1326 (imposition of one-year suspension of driving privileges on military installation pursuant to Army Regulation 190-5 held to constitute "punishment" for double jeopardy purposes); *Murphy v. Commonwealth* (D.C. Va. 1995), 896 F.Supp. 577, 583 (Driver who had been issued a seven-day suspension presented "a double jeopardy claim that is colorable, if not compelling.").

**{¶ 68}** In contrast, R.C. 4511.191 authorizes administrative license suspensions for as long as five years, while failing to provide for mandatory rehabilitative training for offenders, and, in some circumstances, irrespective of the ultimate determination of the driver's guilt or innocence of the underlying criminal DUI charge.

**{¶ 69}** We conclude that an automatic and immediate administrative license suspension "crosses the line," transforming an initially remedial license suspension into a punishment for double jeopardy purposes, at the point of criminal sentencing after a DUI conviction for violation of R.C. 4511.19. At that point, continued recognition or enforcement of the ALS would result in cumulative "punishment" being imposed upon the criminal offender, which is precluded by the Double Jeopardy Clauses of the United States and the Ohio Constitutions.

**{¶ 70}** Accordingly, a sentencing court has judicial power pursuant to Sections 1 and 4, Article IV of the Ohio Constitution to order the termination of an administrative license suspension at the time of sentencing, as continuation of the ALS would result in unconstitutional application of R.C. 4511.191 to the criminal offender. To "fairly be characterized as remedial" rather than punishment for double jeopardy purposes, an ALS must terminate upon sentencing for violation of R.C. 4511.191, if the ALS has not already expired by operation of law.

**{¶ 71}** Some defendants argue that R.C. 4511.191 appears to have been enacted, at least in part, to "make an example" of arrested drivers and to deter others from driving while drunk. Assuming the validity of the argument, it does not follow that every ALS imposed pursuant to R.C. 4511.191 constitutes a "punishment" for double jeopardy purposes. In *Kurth Ranch* the court noted that "while a high tax rate *and deterrent purpose* lend support to the characterization of the drug tax as punishment, these features, in and of themselves do not necessarily render the tax punitive." (Emphasis added.) *Kurth Ranch*, 511 U.S. at ___, 114 S.Ct. at 1947, 128 L.Ed.2d at 779. In addition, we concur with Justice Kennedy's admonition in *Halper*

that courts should not be required to conduct a "broad inquiry into the subjective purposes that may be thought to lie behind a given judicial proceeding." *Id*., 490 U.S. at 453, 109 S.Ct. at 1904, 104 L.Ed.2d at 504 (Kennedy, J., concurring). As noted by Justice Kennedy, "[s]uch an inquiry would be amorphous and speculative, and would mire the courts in the quagmire of differentiating among the multiple purposes that underlie every proceeding, whether it be civil or criminal in name." *Id*. at 453, 109 S.Ct. at 1904, 104 L.Ed.2d at 505.

{¶ 72} We therefore hold that an administrative license suspension ceases to be remedial and becomes punitive in nature to the extent it is deemed to continue subsequent to conviction and sentencing for violation of R.C. 4511.19. Because an ALS loses its remedial character upon judicial adjudication of guilt and sentencing for the DUI charge, the Double Jeopardy Clauses of the United States and Ohio Constitutions preclude continued recognition of an ALS following judicial imposition of criminal penalties.

II

Dispositions

{¶ 73} Gustafson has not yet stood criminal trial to adjudicate the DUI charge against him, and our conclusion that the lower court erred in precluding further prosecution requires a reversal and remand of his case for further proceedings to resolve the criminal charge of violation of R.C. 4511.19.

{¶ 74} Upon remand, the ultimate disposition of Gustafson's criminal case is a matter for determination in the first instance by the trial court. However, this court takes judicial notice of the fact that numerous cases presenting double jeopardy challenges similar to Gustafson's are currently pending in the courts of Ohio. We therefore include several additional observations which may prove useful to trial courts in determining those cases.

{¶ 75} On remand, Gustafson presumably will be adjudicated either "guilty" or "not guilty" of the criminal DUI charge against him. Presumably Gustafson's

ninety-day ALS has expired by its own terms, as more than two years have passed since his ALS was imposed. If Gustafson is found guilty of the DUI charge, the trial court will thus not likely be called upon to order termination of an ALS. The question may instead arise whether Gustafson's completion of the full ninety-day suspension imposed pursuant to R.C. 4511.191 requires a different resolution of his double jeopardy challenge.

{¶ 76} We have concluded that a short-term administrative license suspension may "fairly be characterized as remedial" in purpose insofar as it provides for interim protection of the public pending judicial determination of the driver's guilt or innocence of drunk driving. A first-time defendant charged with that crime has a statutory right to obtain a speedy trial of the DUI charge within ninety days. R.C. 2945.71 *et seq.* In many cases, as in Gustafson's case, expiration of an administrative license suspension before trial will occur, if at all, as a result of the defendant's own waiver of speedy trial protections. In such a situation, a trial court may well find that the administrative license suspension continued to be of a remedial nature throughout its full statutory duration.

{¶ 77} If, alternatively, Gustafson is adjudicated not guilty of the DUI charge, his double jeopardy arguments necessarily fail. A "not guilty" adjudication precludes imposition of criminal punishment. A court need not engage in a *Halper* analysis to determine whether a sanction was "remedial" or constitutes "punishment" when a single sanction has been imposed. In such a circumstance, double jeopardy considerations do not arise.

{¶ 78} The remaining cases pending before this court are cases in which DUI prosecutions *have* proceeded to judgment of conviction and sentencing following the overruling of motions to dismiss the DUI charges. We thus are called upon to determine whether the decisions of the lower courts in those cases are consistent with our holdings herein.

**{¶ 79}** We first examine the cases of Sally Bayman and Kenneth Roth, both of whom refused chemical testing at the time of arrest, and later entered pleas of no contest to the DUI charges filed against them. Having determined that the imposition of administrative license suspensions at the time of their arrests did not justify dismissal of the criminal proceedings against them based on the Double Jeopardy Clause, we find that the express terms of R.C. 4511.191 mandate the disposition of their appeals. R.C. 4511.191(K) provides:

"A suspension of the driver's *** license *** for refusal to submit to a chemical test to determine the alcohol, drug, or alcohol and drug content of the person's blood, breath, or urine pursuant to division (E) of this section, shall be terminated by the registrar upon receipt of notice of *** conviction after entering a plea of no contest under Criminal Rule 11 to, operating a vehicle while under the influence of alcohol, *** if the offense for which the plea is entered arose from the same incident that led to the suspension or denial."

**{¶ 80}** Because the statute expressly authorizes termination of an ALS upon a chemical-test refusal followed by a "no contest" plea, Bayman and Roth's causes are affirmed for the reasons discussed herein and remanded, with instructions that the trial court issue an order to BMV to terminate their respective ALSs, retroactive to the date of sentencing on the DUI convictions.

**{¶ 81}** We affirm the judgments of the lower court as to appellants Miller, Brown and Smith, who consented to breath-alcohol testing, but failed the chemical test. Upon entry of conviction and sentencing, their administrative license suspensions were properly ordered terminated, as at that point in time their ALSs ceased to be "remedial" in purpose as that term is used in the double-jeopardy context. Continued recognition of each defendant's ALS subsequent to conviction and criminal sentencing would therefore result in these appellants being punished twice in separate proceedings based on the same conduct of drunk driving. Thus, R.C. 4511.191 would be applied unconstitutionally to them.

*Judgment accordingly.*

DOUGLAS, RESNICK, F.E. SWEENEY and KARPINSKI, JJ., concur.

DOUGLAS, J., concurs separately.

PATTON and COOK, JJ., concur in part and dissent in part.

JOHN T. PATTON, J., of the Eighth Appellate District, sitting for WRIGHT, J.

DIANE KARPINSKI, J., of the Eighth Appellate District, sitting for PFEIFER, J.

_____

**DOUGLAS, J., concurring.**

{¶ 82} I concur in the majority's comprehensive and well-reasoned opinion holding that the initiation of separate criminal proceedings after the imposition of an administrative license suspension does not violate the protections afforded individuals by the Double Jeopardy Clauses of the United States and Ohio Constitutions. I write separately only to state my reasons for concurring in the majority opinion and to summarize what I believe to be some of the findings of the majority. Further, I believe that our holding in *State v. Hochhausler* (1996), 76 Ohio St.3d 455, 668 N.E.2d 457, paragraph two of the syllabus, will clarify further any future double jeopardy or due process claims that may arise with respect to administrative license suspensions.

{¶ 83} The Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution prevent an individual from twice being *prosecuted* for the same offense. *State v. Delfino* (1986), 22 Ohio St.3d 270, 272-273, 22 OBR 443, 445, 490 N.E.2d 884, 887. We have also held that the suspension of a driver's license pursuant to R.C. 4511.191 is a separate administrative action unrelated to the criminal case in which the defendant is charged. *Hoban v. Rice* (1971), 25 Ohio St.2d 111, 116, 54 O.O.2d 254, 257, 267 N.E.2d 311, 315, and *State v. Starnes* (1970), 21 Ohio St.2d 38, 45-46, 50 O.O.2d 84, 88, 254 N.E.2d 675, 679-680. In addition, we have repeatedly stated that driver's license suspension proceedings are civil and administrative in nature and are not *criminal*

proceedings. See, *e.g.*, *Andrews v. Turner* (1977), 52 Ohio St.2d 31, 36, 6 O.O.3d 149, 151, 368 N.E.2d 1253, 1256. Thus, none of the defendants in the cases before us were *prosecuted* as a result of their R.C. 4511.191 administrative license suspensions. The state therefore does not implicate the Double Jeopardy Clauses of the United States and Ohio Constitutions by merely subjecting individuals to an administrative license suspension and also subjecting them to criminal prosecutions pursuant to R.C. 4511.19.

{¶ 84} With respect to the underlying purpose of R.C. 4511.191, we have emphasized that the aim of the statute is not to punish individuals who refuse to take a sobriety test or punish those who test over the legal limit, but to protect the public. See, *e.g.*, *Hoban*, *supra*, 25 Ohio St.2d at 114, 54 O.O.2d at 256, 267 N.E.2d at 314 ("R.C. 4511.191 * * * was enacted to protect innocent motorists and pedestrians from injury and death caused by irresponsible acts of unsafe drivers on Ohio streets and highways. The broad purpose of the implied-consent statute is to clear the highways of and to protect the public from unsafe drivers."). Indeed, R.C. 4511.191 is remedial in nature. Accordingly, if proper protections are accorded, an administrative license suspension does not violate any prohibition against multiple punishments.

{¶ 85} Further, the right to drive a motor vehicle in Ohio is not constitutionally guaranteed. In fact, the right to possess a driver's license is not a substantial private interest but a state regulated privilege. *Maumee v. Gabriel* (1988), 35 Ohio St.3d 60, 63, 518 N.E.2d 558, 561. Clearly, the right to operate motor vehicles on public roadways of this state may be regulated by the lawful exercise of the police power for the benefit of public safety and welfare. In this regard, a sanction which involves the suspension of a *privilege* that was voluntarily granted supports a finding that it is "characteristically free of the punitive criminal element." *Helvering v. Mitchell* (1938), 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917, 922.

**{¶ 86}** Moreover, in *Hochhausler,* we severed the "no stay" provision from R.C. 4511.191(H)(1), concluding that the provision is unconstitutional as violative of the separation of powers doctrine. Clearly, inherent within a court's jurisdiction is the right to grant or deny stays. The practical effect of our holding in *Hochhausler* is that during the initial appearance resulting from the OMVI charge, a trial court now has the discretion to stay (or continue) the driver's license suspension pending further appeal, or pending the outcome of the OMVI charge. However, to facilitate our holding in *Hochhausler*, and to avoid triggering a double jeopardy claim, the initial appearance *must* be held within five days of the individual's arrest. Such a requirement is mandated by statute. See, *e.g.*, R.C. 4511.191(C)(2)(b), (D)(1)(a), (G)(2) and (H)(1), effective July 1, 1996. The five-day time frame is crucial to a determination that a R.C. 4511.191 administrative license suspension remains remedial and not punitive. As such, any continuance of the initial appearance, that was not requested or waived by the defendant, would, in my opinion, punish the defendant and trigger double jeopardy protection.

**{¶ 87}** The ability of a trial court to stay or continue an administrative license suspension at the initial appearance further supports the conclusion that R.C. 4511.191 is truly a remedial statute, rather than punitive in nature. During the initial appearance, a trial court can make an individualized assessment and determine if a stay of the suspension is or is not warranted. As one distinguished commentator has noted: "Double jeopardy and due process arguments are seriously undermined when the decision to continue the ALS is based on an individualized assessment of whether the motorist is a threat to public safety. Drivers with a history of impaired or reckless driving, or who have displayed other indicia of dangerousness, can be prohibited from driving until a court has the opportunity to hear their ALS appeal. As to those drivers that present a lesser risk to public safety, a court can stay the ALS or tailor conditions to any occupational driving privileges granted." Kravitz,

Ohio's Administrative License Suspension: A Double Jeopardy and Due Process Analysis, 29 Akron Law Review (1996) 123, 201.

{¶ 88} The number of instances of individuals driving while under the influence of intoxicating substances continues to be alarming. To obtain a true understanding of the magnitude of the problem, one need only observe the number of OMVI cases that have flooded the courts in this state. Recognizing the problem, the General Assembly has taken strong action to stem the tide. Its efforts to improve public safety should be applauded. I believe that our recent decisions in this area have achieved a proper balance -- protecting innocent motorists and pedestrians from individuals who chose to drink and drive, while also recognizing constitutional safeguards that are afforded to all citizens.

———————————

**PATTON, J., concurring in part and dissenting in part.**

{¶ 89} I join with paragraphs one and two of the syllabus, but dissent from paragraphs three, four and five of the syllabus. Like Justice Cook, I believe double jeopardy is not implicated by the ALS statute, but wish to add some additional thoughts.

{¶ 90} I agree with Justice Cook's analysis that R.C. 4511.191 does not violate the Double Jeopardy Clause because the *in rem* forfeiture of a driver's license is neither punishment nor tied to criminal behavior. In my view, R.C. 4511.191 serves primarily the purpose of assisting the state in proving a drunk driving offense by enforcing a driver's implied consent to chemical testing. Viewed in this light, the refusal to take a chemical test is grounded on conduct wholly different from the drunk driving offense and therefore is not the same criminal activity.

{¶ 91} Just this term in *Dobbins v. Ohio Bur. of Motor Vehicles* (1996), 75 Ohio St.3d 533, 537, 664 N.E.2d 908, 911, we stated that R.C. 4511.191(C)(1) is "constitutional and all proceedings thereunder are civil in nature and solely

administrative." This view comports with our long-standing precedent to that same effect. See, *e.g.*, *Hoban v. Rice* (1971), 25 Ohio St.2d 111, 54 O.O.2d 254, 267 N.E.2d 311, paragraph one of the syllabus; *State v. Starnes* (1970), 21 Ohio St.2d 38, 50 O.O.2d 84, 254 N.E.2d 675, paragraph two of the syllabus.

{¶ 92} Driving while intoxicated and refusing to take a chemical test are separate actions for purposes of double jeopardy analysis. The majority's view that these separate actions are so "inextricably intertwined" as to constitute the same offense overlooks the underlying purpose of the refusal statute.

{¶ 93} The General Assembly instituted the ALS as a means of facilitating the state's interest in proving drunk driving offenses; hence, the ALS simply enforces the driver's implied consent to chemical testing. This implied consent to chemical testing is a condition of securing the privilege to drive a motor vehicle. We said as much in *Dobbins*, when we found that the implied consent statute is "'designed to discourage any person from refusing to take the tests when he is arrested for driving while under the influence.'" *Id.* at 539, 664 N.E.2d at 912.

{¶ 94} Nearly every component of R.C. 4511.191 is geared to effectuate the state's interest in proving the drunk driving offense. For example, the suspensions imposed on drivers who refuse to take a chemical test are greater than those imposed for drivers who take the chemical test and fail. Compare R.C. 4511.191(E)(1)(a) through (d) (refusing to take the test) with R.C. 4511.191(F)(1)(a) through (d) (failing the test). The statute specifically provides that a suspension for refusing to take the chemical test continues despite a not guilty verdict, while the suspension imposed for failing the chemical test terminates upon a not guilty finding. See R.C. 4511.191(H)(2). Finally, the only time a refusal suspension is terminated is if the driver either pleads guilty or no contest to the charge under Crim.R. 11. See R.C. 4511.191(K). Hence, if the driver belatedly lives up to the preconditions for obtaining a license, it obviates the state's need to

go forward with proof at trial. It is therefore perfectly logical for the General Assembly to implement the statutory framework it has devised.

{¶ 95} This framework is entirely in keeping with the legislature's intent to enforce the implied consent provisions. The refusal to take the chemical test is not criminal conduct, but it is a sanction for failing to live up to the conditions prescribed for obtaining and holding a driver's license. We have upheld the implied consent statute on numerous occasions, and in other contexts relating to licensing, stated, "Clearly the license is a personal privilege subject to reasonable restrictions and revocation by the issuing authority." *Ohio State Med. Bd. v. Miller* (1989), 44 Ohio St.3d. 136, 140, 541 N.E.2d 602, 605, citing *Lap v. Axelrod* (1983), 95 App.Div. 457, 467 N.Y. S.2d 920. By imposing an administrative license suspension for refusing to take a chemical test, the state does no more than enforce a condition of obtaining a license.

{¶ 96} I also believe *United States v. Ursery* (1996), 518 U.S. ___, 116 S.Ct. 2135, 135 L.Ed.2d 549, 1996 WL 340815, has a far broader reach. though *Ursery* limited its discussion to *in rem* forfeitures, there can be no doubt that decision disavows the reasoning of the *Halper-Auston-Kurth Ranch* trilogy utilized by the majority.

{¶ 97} Crucial to the majority's analysis is the notion that under *Halper*, R.C. 4511.191 violates double jeopardy because its remedial aspects somehow "cross the line" and become punishment. *Ursery*, however, put the *Halper* line of analysis to a stop. Chief Justice Rehnquist, writing for the court, expressly rejected any application of *Halper* that would impose a general rule whereby courts could consider whether a sanction is punitive in character. Chief Justice Rehnquist labeled that discussion in *Halper* "*dictum*," and noted the court's own holding in that case did not support such a conclusion:

"Whether a particular sanction 'cannot fairly be said *solely* to serve a remedial purpose' is an inquiry radically different from that we have traditionally

employed in order to determine whether, as a categorical matter, a civil sanction is subject to the Double Jeopardy Clause. Yet nowhere in *Halper* does the Court purport to make such a sweeping change in the law, instead emphasizing repeatedly the narrow scope of the decision. *Halper, supra*, at 449 [109 S.Ct. at 1902, 104 L.Ed.2d at 502] (announcing rule for 'the rare case'). If the 'general rule' of Justice Stevens were applied literally, then virtually every sanction would be declared to be a punishment: *it is hard to imagine a sanction that has no punitive aspect whatsoever*. Justice Stevens' interpretation of *Halper* is both contrary to the decision itself and would create an unworkable rule inconsistent with well-established precedent." (Emphasis added in part.) *Ursery*, 518 U.S. at ___, 116 S.Ct. at 2146, 135 L.Ed.2d at 566, fn. 2.

**{¶ 98}** The majority does not apply this interpretation of *Halper*, but instead tries to distinguish it by noting *Halper* involved *in rem* forfeiture while this case does not. This is a distinction without a meaning. The United States Supreme Court forcefully limited *Halper*, finding an *in rem* forfeiture would be subject to the Double Jeopardy Clause when the "'clearest proof'" showed that an *in rem* forfeiture is "'so punitive either in purpose or effect'" that it became the equivalent of a criminal proceeding. *Id*. at ___ , 116 S.Ct. at 2148, 135 L.E.2d at 569, fn. 3.

**{¶ 99}** There may be a punitive element to the ALS, but that consequence comes only as a result of enforcing the implied consent provisions, not as a matter of driving while intoxicated. Ursery held a remedial sanction can carry with it an unavoidable component of retribution or punishment, but that fact alone is not sufficient to show a punitive purpose behind the statute. The majority must show by the "clearest proof" that the license suspension is so punitive either in purpose or effect that it becomes criminal punishment. Yet, we have consistently found the ALS statute is civil and remedial in purpose, a finding the majority reaffirms today.

**{¶ 100}** The majority's view that the short suspension periods set forth in R.C. 4511.191 "cross the line" from remediation to punishment at the time of

conviction creates a double jeopardy exception where the United States Supreme Court has said that none exists. It should be recognized the initial ninety-day suspension period is actually shorter than the suspension periods of other states that have upheld the constitutionality of their suspension statutes. See, *e.g.*, Fla.Stat.Ann. Section 322.2615(1)(b)(1.a.) (one-year suspension for first refusal); Mass.Ann.Laws Chapter 90, Section 24(1)(f)(1) (at least one-hundred-twenty-day suspension, but not more than one year for first refusal); Ariz.Rev.Stat. Section 28-691(B) (twelve-month suspension for first refusal); Ind.Ann.Code Section 9-30-6-9(a)(1) (one-year suspension for first refusal).

{¶ 101} Of course, the suspension periods in R.C. 4511.191(E)(1)(a) through (d) increase dramatically for drivers with prior refusals (topping out at five years for a third refusal to consent to testing within five years), but those increased suspension periods are directly related to the number of prior refusals. As the majority recognizes, Ohio police are not authorized to demand chemical testing absent probable cause to believe the driver is intoxicated. Probable cause to believe a driver is operating a vehicle while intoxicated arises from readily discernable indicia under the totality of the circumstances. See, *e.g.*, *State v. Bycznski* (1994), 98 Ohio App.3d 625, 649 N.E.2d 285, (bloodshot eyes and slurred speech); *Wickliffe v. Gutauckas* (1992), 79 Ohio App.3d 224, 607 N.E.2d 54 (collecting cases). Therefore, repeated refusals to take requested chemical tests demonstrate a level of recidivism meriting the additionally lengthy suspension periods imposed by the General Assembly.

{¶ 102} Finally, even if the majority correctly uses *Halper* as the basis of its double jeopardy analysis, R.C. 4511.191 would still pass muster as a matter of constitutional law. The courts have repeatedly upheld remedial sanctions imposed following a related criminal conviction. For example, in *State ex rel. Celebrezze v. Hughes* (1991), 58 Ohio St.3d 273, 569 N.E.2d 1059, this court relied on *Halper* and held in the syllabus that R.C. 1345.07(D) and 4549.48(B) were intended to

impose civil penalties without regard to the procedural protections and restrictions available in criminal prosecutions.

{¶ 103} Under somewhat closer facts, the courts have held that a prisoner's forty-five-day disciplinary segregation following a conviction for institutional assault sufficiently related to the government's remedial interest in maintaining prison order that it did not constitute punishment for double jeopardy purposes. See, *e.g., United States v. Hernadez-Fundora* (C.A.2, 1995), 58 F.3d 802; see, also, *State v. Keller* (1976), 52 Ohio App.2d 217, 6 O.O.3d 235, 369 N.E.2d 798.

{¶ 104} And, in *United States v. Stoller* (C.A.1, 1996), 78 F.3d 710, the court found an administrative debarment imposed by the Federal Deposit Insurance Corporation did not constitute a punishment for double jeopardy purposes so as to bar a subsequent criminal prosecution under federal banking laws.  See, also, *United States v. Hudson* (C.A.10, 1994), 14 F.3d 536 (same); cf. *Manoccio v. Kusserow* (C.A.11, 1992), 961 F.2d 1539 (physician's five-year debarment from federal Medicare program not barred by physician's prior conviction on Medicare fraud stemming from the same events).

{¶ 105} The General Assembly intended R.C. 4511.191 to have a strong bite, but today's decision, read in conjunction with *State v. Hochhausler* (1996), 76 Ohio St.3d 455, 668 N.E.2d 457, extracts the teeth from the statute.

{¶ 106} By enacting the "no stay" provisions of R.C. 4511.191(H)(1), the General Assembly intended to force courts to impose consistently the mandated license suspensions.  Severing the "no stay" provision gives trial courts unlimited discretion to allow drunk drivers back on the highways while they await the protracted delays occasioned by their appeals as they wind their way through the judicial system.

{¶ 107} R.C. 4511.191(H)(1) does not grant courts discretion to refuse to impose a suspension—if the state establishes the four criteria set forth in R.C. 4511.191(H)(1), the suspension must be imposed, in increasing severity to the

number of prior refusals to take the test. Nevertheless, lower courts can now exercise unlimited discretion to stay execution of the mandatory suspension. The logical conclusion is that a stay could be entered pending either the outcome of the criminal charge or further appeal of the license suspension. That discretion would be unfettered because the state would have no opportunity to appeal the stay, there being no final order (unlike the defendant appealing a license suspension). Cf. *Bellaire City Schools Bd. of Edn. v. Paxton* (1979), 59 Ohio St.2d 65, 391 N.E.2d 1021, syllabus.

{¶ 108} The obvious question, then, is why would a driver take the breath test? Suppose a driver receives an ALS for a third refusal to take a test in the previous five years. The driver appeals the suspension at an initial hearing held one day following the arrest. The trial court upholds the ALS, but stays execution of the ALS pending the outcome of the drunk driving charge. Regardless of the outcome of that drunk driving charge, the ALS now terminates upon either acquittal or judgment of conviction. As a practical matter, the driver has suffered only a one-day loss in driving privileges, a minor inconvenience, in exchange for depriving the state of conclusive proof from the results of a chemical test.

{¶ 109} This result is contrary to the obvious intent and sound policy which prompted the General Assembly to enact the statute. If R.C. 4511.191 is to have any meaningful remedial purpose, the statute must be upheld in its entirety. I would find R.C. 4511.191 constitutional in all respects; therefore, I respectfully dissent.[4]

---

4. The court's holding today may have other unintended ramifications. The governing bodies of most professional organizations are permitted to discipline members who commit felonies or crimes by suspending or revoking those members' professional licenses. See, *e.g.*, R.C. 4701.16 (accountants); R.C. 4731.22(B) (physicians). Pursuant to Gov.Bar R. V(5)(A)(3), this court has upheld the suspension or disbarment of attorneys for criminal convictions. See, *e.g., Disciplinary Counsel v. Mullen* (1995), 73 Ohio St.3d 295, 652 N.E.2d 978; *Disciplinary Counsel v. Ostheimer* (1995), 72 Ohio St.3d 304, 649 N.E.2d 1217. Presumably, a license to practice one's livelihood would be considered at least as important as a license to drive, so the court's holding today raises serious double jeopardy implications with such suspensions or disbarments.

COOK, J., concurs in the foregoing opinion.

———————————————

**COOK, J., concurring in part and dissenting in part.**

**{¶ 110}** I concur in paragraphs one and two of the syllabus. However, I respectfully dissent from paragraphs three, four and five. I disagree with the majority's conclusion that the *Halper-Austin-Kurth Ranch* "trilogy" mandates a finding that the ALS constitutes punishment. The recent United States Supreme Court pronouncement in *United States v. Ursery* (1996), 518 U.S. __, 116 S.Ct. 2135, 135 L.Ed.2d 549, 64 USLW 4565, so limits the applicability of those cases to their individual facts as to render discussion of them as a group inapposite.

**{¶ 111}** Unless the ALS sanction is intended as punishment, such that the proceeding is essentially criminal in character, the Double Jeopardy Clause is not applicable. *United States v. One Assortment of 89 Firearms* (1984), 465 U.S. 354, 362, 104 S.Ct. 1099, 1105, 79 L.Ed.2d 361, 368. In *Ursery*, the Supreme Court employed the two-part analysis articulated in *89 Firearms*, *supra*, to determine whether an *in rem* civil forfeiture proceeding constituted punishment. 518 U.S.at __, 116 S.Ct. at 2146-2148, 135 L.Ed.2d at 566-569, 64 USLW at 4571. In reaching its conclusion, the *Ursery* court rejected the notion that the *Halper-Austin-Kurth Ranch* trilogy accomplished a "radical jurisprudential shift" in double jeopardy analysis. *Id.* at __, 116 S.Ct. at 2143-2144, 135 L.Ed.2d at 562-564, 64 USLW at 4569. Rather, the court limited application of the "trilogy" to the facts presented in them. For example, the court limited the *Halper* proportionality test to *in personam* civil penalties, the *Kurth Ranch* analysis to tax proceedings, and *Austin* to civil forfeitures under the Excessive Fines Clause. *Id.* at __, 116 S.Ct. at 2146-2148, 135 L.Ed.2d at 566-569, 64 USLW at 4571. The court stressed that "[n]one of those cases dealt with the subject of this case: *in rem* civil forfeitures for purposes of the Double Jeopardy Clause." *Id.* at ___, 116 S.Ct. at 2147, 135 L.Ed.2d at 568.

{¶ 112} Clearly, the ALS is not a tax proceeding; nor does Gustafson challenge the ALS under the Excessive Fines Clause. Thus, we must consider whether the ALS is more in the nature of an *in rem* civil forfeiture or an *in personam* civil penalty to determine the proper punishment analysis to apply in this case.

{¶ 113} In discussing the differences between *in rem* civil forfeitures and *in personam* civil penalties, the *Ursery* court stated:

"[W]e have distinguished civil penalties such as fines from civil forfeiture proceedings that are *in rem*. While a 'civil action to recover. . . penalties, is punitive in character,' and much like a criminal prosecution in that 'it is the wrongdoer in person who is proceeded against . . .and punished,' in an *in rem* forfeiture proceeding, 'it is the property which is proceeded against, and by resort to a legal fiction, held guilty and condemned.'

"* * * Civil penalties are designed as a rough form of 'liquidated damages' for the harms suffered by the Government as a result of a defendant's conduct. * * * Civil forfeitures, in contrast to civil penalties, are designed to do more than simply compensate the Government. Forfeitures serve a variety of purposes, but are designed primarily to confiscate property used in violation of the law, and to require disgorgement of the fruits of illegal conduct." *Id.* at ___ - ___, 116 S.Ct. at 2144-2145, 135 L.Ed.2d at 565, 64 USLW at 4570.

{¶ 114} A driver's license is a property right, and not a liberty interest. See *State v. Williams* (1996), __ Ohio St.3d __, __ N.E.2d __; see, also, *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio St.3d 46, 554 N.E.2d 97, paragraph two of the syllabus ("In Ohio, a license to operate a motor vehicle is a privilege, and not an absolute property right."). The ALS also serves a variety of purposes, but is designed primarily to remove intoxicated drivers from the highways by temporarily confiscating the licenses of those drivers when they have been used to violate the law. See *Dobbins v. Ohio Bur. of Motor Vehicles* (1996), 75 Ohio St.3d 533, 539, 664 N.E.2d 908, 912. For these reasons, I conclude that the ALS is more in the

nature of an *in rem* civil forfeiture rather than an *in personam* civil penalty and, accordingly, apply the *89 Firearms* two-part analysis to determine whether the ALS is civil and remedial or criminal and punitive in nature.

{¶ 115} Under the first prong of the *89 Firearms* test, this court should ask whether the General Assembly intended the proceedings under R.C. 4511.191 to be criminal or civil. 465 U.S. at 362, 104 S.Ct. at 1105, 79 L.Ed.2d at 368. The General Assembly's intent is most clearly demonstrated by the procedural mechanisms it established to enforce the ALS. See *Ursery*, 518 U.S. at ___ - ___, 116 S.Ct. at 2146-2148, 135 L.Ed.2d at 566-569, 64 USLW at 4571. As noted by the majority, the ALS is accomplished through "administrative proceedings" of a summary nature. The proceedings are not conducted in the criminal court, but rather are conducted initially by the arresting officer and processed within the bureaucracy of the BMV. Thereafter, a judicial officer presides over the administrative appeal of the ALS. At the appeal, the *defendant carries the burden of proving by a preponderance of the evidence* that one of the specified conditions for the ALS has not been met. R.C. 4511.191(H)(2). By creating these distinctly administrative and civil proceedings to enforce the ALS, the General Assembly has indicated that it intended a civil and not a criminal sanction.

{¶ 116} Under the second part of the *89 Firearms* test, a court considers whether the proceedings are so punitive in fact as to "persuade us that the forfeiture proceeding[s] may not legitimately be viewed as civil in nature," despite the General Assembly's intent. 465 U.S. at 366, 104 S.Ct. at 1107, 79 L.Ed.2d at 371. "'"Only the clearest proof"' that the purpose and effect of [the ALS] are punitive will suffice to override [the General Assembly's] manifest preference for a civil sanction. * * * " (Citations omitted.) *Id.* at 365, 104 S.Ct. at 1106, 79 L.Ed.2d at 370. In *Kennedy v. Mendoza-Martinez* (1963), 372 U.S. 144, 168-169, 83 S.Ct. 554, 567-568, 9 L.Ed.2d 644, 661, the court set forth a list of considerations that are helpful in making this determination, although this list is "neither exhaustive

nor dispositive." *United States v. Ward* (1980), 448 U.S. 242, 249, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742, 750.[5]

{¶ 117} As was the case in *Ursery*, most significant among the considerations is that despite having certain punitive aspects, the ALS serves important nonpunitive goals. 518 U.S. at ___-___, 116 S.Ct. at 2148-2149, 135 L.Ed.2d at 570, 64 USLW at 4572. The goal and corresponding purpose of the ALS are to remove drunk drivers from our highways in order to protect the public. Although the terms of the suspension may extend beyond the time period necessary to achieve this immediate goal, the length of the suspension directly correlates to the number of OMVI convictions within the preceding five years and is not excessive. Scaling the terms of the suspension reflects the level of danger repeat offenders are presumed to present to the public and the overriding remedial nature of the suspension. The 1993 amendments to the ALS statute also support the conclusion that the suspension is remedial. Under the older provisions of the ALS statute, the suspension did not become effective until processed by the BMV. See *State v. Sims* (Aug. 21, 1995), Butler App. No. CA94-12-215, unreported. Under the current ALS statute, however, the suspension is immediately effective. R.C. 4511.191(D)(1). This change indicates the legislative intent to pass remedial legislation accelerating the time for the removal of allegedly intoxicated drivers from the road. Though the ALS may be said to serve the purpose of deterrence, this purpose may serve criminal as well as civil goals. *Ursery*, 518 U.S. at ___-___, 116 S.Ct. at 2148-2149, 135 L.Ed.2d at 570, 64 USLW at 4572.

---

5. The *Mendoza-Martinez* considerations include "[w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned * * *." (Footnotes omitted.) 372 U.S. at 168-169, 83 S.Ct. at 567-568, 9 L.Ed.2d at 661.

**{¶ 118}** Other considerations relevant to the question of whether a proceeding is criminal support a conclusion that R.C. 4511.191 is a civil proceeding. As acknowledged by the majority, these proceedings historically and repeatedly have been considered civil in nature and remedial in purpose. *Dobbins*, 75 Ohio St.3d at 537, 664 N.E.2d at 911; *Andrews v. Turner* (1977), 52 Ohio St.3d 31, 6 O.O.3d 149, 368 N.E.2d 1253; *Hoban v. Rice* (1971), 25 Ohio St.2d 111, 54 O.O.2d 254, 267 N.E.2d 311; *State v. Starnes* (1970), 21 Ohio St.2d 38, 50 O.O.2d 84, 254 N.E.2d 675. This court has previously labeled the temporary license suspension an "inconvenience," *Columbus v. Adams* (1984), 10 Ohio St.3d 57, 60, 10 OBR 348, 350, 461 N.E.2d 887, 890, and the granting of a license a privilege and not an absolute property right. *Dobbins*, 75 Ohio St.3d at 538, 664 N.E.2d at 912; *Doyle*, 51 Ohio St.3d at 51, 554 N.E.2d at 102. Thus, under our precedent, the temporary revocation of a driver's license does not establish an affirmative restraint or disability. In addition, there is no requirement that the government establish *scienter* in order to establish that the license is subject to suspension. Although the ALS is tied to criminal activity, I find, as did the *Ursery* court, that by itself, this fact does not constitute the "clearest proof" necessary to show that the proceeding is criminal.

**{¶ 119}** Accordingly, I would hold that the ALS is not punishment for purposes of the Double Jeopardy Clause and therefore, does not preclude a later OMVI conviction.

PATTON, J., concurs in the foregoing opinion.

————————————