OPINION
Defendant-appellant Stanley L. Cochran appeals his conviction and sentence from the Mansfield Municipal Court on one count of operating a motor vehicle under the influence of alcohol. Plaintiff-appellee is the City of Mansfield.
 STATEMENT OF THE FACTS AND CASE
On May 20, 1998, the Mansfield Police Department ticketed appellant with operating a motor vehicle under the influence of alcohol in violation of Mansfield Ordinance 333.01(A)(1) and (3), failure to maintain an assured clear distance in violation of Mansfield Ordinance 333.03, fictitious plates in violation of Mansfield Ordinance 335.11(A), and for hit skip in violation of Mansfield Ordinance 335.12. (However, appellant was ultimately not charged with hit skip.) Appellant's driver's license was suspended on the same date. Appellant failed to appear at his arraignment, which was scheduled for May 27, 1998. However, on June 2, 1998, appellant filed a written plea of "not guilty" to the above charges and an appeal of the administrative license suspension (ALS) which was imposed on May 20, 1998. The same day, appellant filed a motion to suppress. Pursuant to a Judgment Entry filed on June 3, 1998, the trial court overruled appellant's motion to suppress, finding that such motion was "just a boiler plate motion challenging each and every aspect of the arrest without specifically stating a factual basis for the same." The trial court also denied appellant's appeal of the ALS, finding that the appeal was not timely filed since appellant did not appear on May 27, 1998, and appeal his license suspension at his initial appearance. On June 28, 1998, appellant renewed his previously filed motion to suppress, arguing that the results of the BAC test administered to him should be suppressed since there was neither a reasonable articulable suspicion to stop appellant nor probable cause to arrest him. Thereafter, a suppression hearing was held on October 15, 1998. The following evidence was adduced at the hearing. On May 20, 1998, at approximately 4:53 P.M., Amy Hawkins was driving her daughter to a recital when her van, which was stopped in traffic, was rear ended by a brown colored Jeep. To get out of traffic, Hawkins pulled off of the roadway into a private driveway approximately one hundred feet away from where the accident occurred with the belief that the driver of the Jeep would follow her. However, the driver of the Jeep, who Hawkins described as a white male with long hair, drove away. Hawkins, who was unable to get the Jeep's license plate number, then used her cell phone to call 9-1-1. At the hearing, Hawkins identified appellant as the driver of the Jeep. Patrolman Jeffrey Scott of the Mansfield Police Department was dispatched to the scene of the accident. When he spoke with Hawkins, she told him that "a tanish or a darkish brown Jeep with a white male subject had struck her from behind." Transcript of Proceedings at 24. While Patrolman Scott was at the scene of the accident, Patrolman Beth Nelson of the Mansfield Police Department searched for the vehicle that had struck Hawkins' van. After receiving a call from the Mansfield Fire Department that they were behind a vehicle meeting the description of the Jeep and that such vehicle was pulling into a parking lot at 228 Park Avenue, West, Patrolman Nelson proceeded to that location. Upon her arrival, she observed a Jeep with front end damage. Appellant, who was standing off to the right of his vehicle leaning against a fence or bannister, had a big gash in the middle of his forehead. When Patrolman Nelson approached appellant, he told her that he had just been in an automobile accident leading her to believe that she had the correct car. Appellant, however, refused any medical treatment. Patrolman Nelson then asked appellant to submit to a couple of tests, including the horizontal gaze nystagmus test, because she smelled a moderate odor of alcohol about his breath or person. While appellant initially agreed to cooperate, every time Patrolman Nelson attempted to give him the test "[h]e would look away and he would say stuff like, oh, my head hurts really bad. I can't concentrate and things like that. He made excuses why he couldn't follow the pen." Transcript of Proceedings at 49. Not only did appellant fail to submit to any of the field sobriety tests, but he was very uncooperative with Patrolman Nelson while she was questioning him. When Patrolman David Scheurer of the Mansfield Police Department arrived and met Patrolman Nelson, he smelled a moderate odor of alcohol on appellant's breath and his person. After a short discussion with Patrolman Scheurer, appellant agreed to submit to a horizontal gaze nystagmus test. Appellant failed all sections of such test. In addition, appellant's eyes appeared bloodshot and glossy. Because Patrolman Scheurer believed that appellant was intoxicated and because appellant was a suspect in a hit skip accident, Patrolman Scheurer arrested appellant for DUI. A BAC test subsequently performed on appellant at the Mansfield Post of the Ohio Highway Patrol yielded a test result of .147 grams of alcohol per 210 liters of breath. At the conclusion of the suppression hearing, the trial court found that there was reasonable, articulable suspicion to stop appellant's vehicle but took the issue of whether or not there was probable cause for appellant's arrest under advisement. Pursuant to a Judgment Entry filed on November 15, 1998, the court overruled appellant's motion to suppress, finding, in addition to the findings made on the record at the conclusion of the hearing, that there was probable cause to arrest appellant for operating a motor vehicle while under the influence of alcohol. On December 4, 1998, appellant entered a plea of no contest to the charge of operating a motor vehicle while under the influence of alcohol and was found guilty of the same. Appellant was sentenced to 60 days in jail, with 55 of the days suspended, was ordered to pay a fine of $500.00, and was ordered to obtain an alcohol assessment and aftercare. In addition, appellant's driver's license was suspended for one year. A Judgment Entry memorializing appellant's plea and sentence was filed on December 4, 1998. Pursuant to a Judgment Entry filed the same day, appellant's ALS was terminated. It is from his conviction and sentence that appellant prosecutes his appeal, raising the following assignments of error:
ASSIGNMENT OF ERROR NO. I
 THE TRIAL COURT ERRED BY CONCLUDING THERE WAS PROBABLE CAUSE TO ARREST THE DEFENDANT FOR OPERATING A MOTOR VEHICLE WHILE UNDER THE INFLUENCE OF ALCOHOL, THEREBY DENYING THE MOTION OF DEFENDANT-APPELLANT TO SUPPRESS THE RESULTS OF A BAC INTOXILIZER TEST AND ANY OTHER EVIDENCE OBTAINED AFTER THE ARREST.
ASSIGNMENT OF ERROR NO. II
 THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S APPEAL OF THE ADMINISTRATIVE LICENSE SUSPENSION.
 I
Appellant, in his first assignment of error, maintains that the trial court erred in overruling appellant's motion to suppress because the arresting officer lacked probable cause to arrest appellant for driving a motor vehicle while under the influence of alcohol. We disagree. There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning (1982) 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486, State v. Guysinger (1993) 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v Curry (1994), 95 Ohio App.3d 93, 96, State v. Claytor (1993), 85 Ohio App.3d 623, 627,620 N.E.2d 906, 908, and State v. Guysinger (1993), 86 Ohio App.3d 592. As the United States Supreme Court held in Ornelas v. U.S. (1996),116 S.Ct. 1657, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." To determine whether an officer had probable cause to arrest an individual for operating a motor vehicle while under the influence of alcohol, the court must examine whether, at the moment of the arrest, the officer had knowledge from a reasonably trustworthy source of facts and circumstances sufficient to cause a prudent person to believe that the suspect was driving while under the influence of alcohol. State v. Medcalf (1996),111 Ohio App.3d 142, 147, citing Beck v. Ohio (1964),379 U.S. 89, 91. The totality of the facts and circumstances must be considered when reviewing drunk driving cases. We find, under the totality of the facts and circumstances of this case, that there was probable cause to arrest appellant for driving under the influence of alcohol. In the case sub judice, Amy Hawkins told Patrolman Scott that she had been rear-ended by a brown Jeep driven by a white male with long hair and that the Jeep had fled the scene of the accident. When Patrolman Nelson located the Jeep, appellant, who had an odor of alcohol on his breath, told Patrolman Nelson that he had just been in an accident. Appellant agreed to submit to a couple of tests. When Patrolman Nelson attempted to administer a horizontal gaze nystagmus test, appellant "made excuses why he couldn't follow the pen" and was very uncooperative with her while she was questioning him. Transcript of Proceedings at 49. Both Patrolman Nelson and Patrolman Scheurer testified that appellant, who refused any medical treatment for the gash on his forehead, smelled moderately of alcohol. Patrolman Scheurer also observed that appellant's eyes were bloodshot and glassy. Furthermore, appellant failed all portions of the horizontal gaze nystagmus test administered by Patrolman Scheurer. While appellant contends that he may have failed the horizontal gaze nystagmus test due to his head injury, we find that the Horizontal Gaze Nystagmus test was only one element the police used in determining there was probable cause. Patrolman Scheurer admitted that the results of the HGN test could have been caused by an injury or alcohol and that he would not rely on the test "wholly by itself" in this situation to determine intoxication. (Transcript of Proceedings at pg. 60.) Patrolman Scheurer knew that the appellant had refused medical treatment and that the appellant had done nothing to lead Patrolman Scheurer to believe that the head injury was serious. In addition, the police had knowledge that the appellant had rear-ended another car, left the scene of the accident, smelled of alcohol, had bloodshot and glassy eyes and was non-cooperative in taking the HGN test after he had consented to do it. We find that these facts and circumstances are sufficient to cause a prudent person to believe that appellant was driving under the influence of alcohol. Since, based on the totality of the facts and circumstances, there was probable cause to arrest appellant for driving under the influence of alcohol, appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant contends that the trial court erred in overruling appellant's appeal of the ALS. The trial court, without a hearing, had overruled appellant's ALS appeal as untimely finding that: 1) R.C. 4511.191 requires that an ALS appeal be filed at the time of the initial appearance, 2) appellant's initial appearance was scheduled for May 27, 1998, 3) appellant failed to appear on May 27, 1998, and a warrant was issued for his arrest, and 4) appellant's appeal was not filed until June 2, 1998. Appellant specifically had requested that the ALS and suppression hearings be held at the same time. As appellant notes in his brief, "[i]t is obvious that Appellant has served his suspension, and to the extent of relieving him from this penalty, the issue is moot." What appellant does ask is that this court "order the trial court to notify the Bureau of Motor Vehicles that Appellant should not be charged the reinstatement fee of $250.00." R.C. 4511.191(G)(2) provides, in relevant part, that if a person is arrested for operating a vehicle while under the influence of alcohol, the person's initial appearance on the charge resulting from the arrest shall be held within five days of the person's arrest or the issuance of the citation to the person. Pursuant to 4511.191(H)(1), such a person "may" appeal the suspension of his or her driver's license at the initial appearance on the charge resulting from the arrest in the court in which the person will appear on that charge. See State v. Gustatson (1996), 76 Ohio St.3d 425. Revised Code Section4511.191(H)(2) states that ". . . if the person does not appeal the suspension at the person's initial appearance under division (H)(1) of this section, the suspension shall continue until the complaint . . . is adjudicated on the merits." It appears that the trial court judge strictly interpreted this language to mean that if a defendant does not appeal the ALS at the initial appearance, the ALS shall continue until trial, and the court cannot grant leave to file a late appeal of the ALS. We disagree with this strict construction of the statute because of the administrative nature of the appeal of an administrative license suspension. Therefore, we will analyze the denial of the ALS appeal by the trial court as a denial of leave to file a late appeal. The denial of a trial court to grant leave to file a pleading outside of the time specified shall be reviewed under an abuse of discretion standard. We do not find that the trial court abused its discretion in denying leave to file a late appeal of an ALS when the appellant failed to appear at the initial hearing which resulted in an arrest warrant being issued for appellant. This denial of leave to file a late appeal was not unreasonable, arbitrary or capricious. Since we find the dismissal of appellant's appeal of his ALS by the trial court was not an abuse of discretion, we overrule appellant's second assignment of error.
The Judgment of the Mansfield Municipal Court is affirmed.
Edwards, J. Wise, P.J. and Gwin, J. concur.