Defendant Jon R. Overholt has appealed from his conviction and sentence in the Wadsworth Municipal Court for driving under the influence of alcohol. This Court affirms.
 I.
On September 3, 1998, Ohio State Trooper Sheppard was traveling eastbound on State Route 18 on routine traffic patrol, when he noticed Defendant's vehicle sway from the right fog line to the centerline. Trooper Sheppard followed Defendant for approximately one and a half miles, in which he observed Defendant continuously weaving. When he crossed the centerline about eight to ten inches, Trooper Sheppard activated his overhead lights to initiate a traffic stop. As Trooper Sheppard asked Defendant for his driver's license and registration, he smelled a mild odor of alcohol coming from the vehicle. Trooper Sheppard asked Defendant if he would exit his vehicle and join him in the patrol car. Defendant complied with Trooper Sheppard's request.
Because Defendant smelled of alcohol, Trooper Sheppard administered the horizontal gaze nystagmus test (HGN) in his patrol car. Before conducting the test, Trooper Sheppard had Defendant twist his shoulders and torso so that he could completely see Defendant's face. Because his overhead light inside the vehicle was not working, Trooper Sheppard aimed a flashlight at Defendant's chest. He placed a pen about twelve to fifteen inches from Defendant's eyes and told him to keep his eyes on the tip of the pen. As Trooper Sheppard moved the pen back and forth, Defendant showed all six indicators of impairment.
At that point, Trooper Sheppard asked Defendant if he would step out of the vehicle and participate in three field sobriety tests. The tests were conducted at the rear of the cruiser on a slight down grade. Trooper Sheppard explained and demonstrated each test before Defendant performed it. When engaging in the walk and turn test, Defendant did not touch heel to toe on three occasions, raised his arms for balance, and moved to the right to avoid falling during the turn. In addition, Defendant raised his arms up and down and put his foot down during the one-leg stand test. On the finger to nose test, Defendant touched his lips both times.
Based on his performance on the tests, Defendant was arrested and charged with driving under the influence of alcohol, a violation of R.C. 4511.19(A)(1), and failing to drive within marked lanes, a violation of R.C. 4511.33(A). At the Highway Patrol Office, Trooper Sheppard read Defendant his Miranda rights and the Bureau of Motor Vehicle forms for implied consent. Defendant stated that his attorney informed him not to take a chemical test without consulting him first, but did not call his attorney because it was late. Because he refused to submit to a chemical test, Defendant received an administrative license suspension, pursuant to R.C. 4511.191(E)(1)(a), for a term of one year.
Defendant moved the trial court to suppress the evidence against him on the charge of driving under the influence of alcohol, asserting that the traffic stop was unconstitutional, that Trooper Sheppard's questioning violated Defendant's Miranda
rights, and that Trooper Sheppard lacked probable cause to arrest him. The trial court denied his motion. The case was set for a jury trial on March 25, 1999.
At trial, the State called Trooper Sheppard to testify. Trooper Sheppard testified that he had been employed by the Ohio State Highway Patrol for eight years and received training at the State Highway Patrol Academy for six months. A portion of the training was devoted to the area of DUI investigations in which Trooper Sheppard was taught to look for certain driving behaviors and physical characteristics of individuals who are likely to be under the influence of alcohol. In 1994, Trooper Sheppard received an additional course in advanced techniques for detecting individuals under the influence of alcohol. Trooper Sheppard is also a certified instructor in the course of apprehension and detection of individuals who are under the influence of alcohol. Based on the above training, the trial court concluded that Trooper Sheppard was properly qualified and allowed the State to introduce his testimony concerning Defendant's performance on the field sobriety tests.
After Trooper Sheppard testified, the State rested and Defendant called Mark Gardner to testify as an expert on field sobriety tests. The trial court conducted an extensive hearing outside the jury's presence to determine whether Mr. Gardner was qualified as an expert. The trial court concluded that Mr. Gardner was not an expert in determining whether an individual is under the influence of alcohol and restricted his testimony to how field sobriety tests are administered. At this point, Defendant moved the trial court to strike Trooper Sheppard's testimony, claiming that the State failed to establish that he was trained to make a conclusion based on Defendant's field sobriety tests. The trial court denied Defendant's request, and Mr. Gardner testified only to explain the procedure of field sobriety tests.
After Mr. Gardner's testimony, Defendant rested and renewed his motion for acquittal. The trial court denied his motion, and the jury found him guilty of driving under the influence of alcohol. On May 5, 1999, Defendant was sentenced to thirty days in jail. His license was suspended for two years, and he was fined three hundred dollars, along with court costs. Defendant timely appealed, asserting seven assignments of error.
 II.
A. Assignment of Error One
 Defendant was denied due process of law when the court overruled his motion to suppress.
 Defendant has asserted that Trooper Sheppard had no constitutional basis for stopping his vehicle. Specifically, Defendant has asserted that there were no articulable facts that warranted a traffic stop. This Court disagrees.
When a motion to suppress is denied, a reviewing court must consider whether the officer making the stop had a reasonable suspicion, based on specific and articulable facts, that the party stopped is or was recently engaged in criminal behavior. SeeTerry v. Ohio (1968), 392 U.S. 1, 21, 20 L.Ed.2d 889, 905-906. "[I]f the specific and articulable facts available to an officer indicate that a driver may be committing a criminal act, which includes the violation of a traffic law, the officer is justified in making an investigative stop." State v. Shook (June 15, 1994), Lorain App. No. 93CA005716, unreported, at 4. This "reasonable suspicion" standard may also be met, with respect to traffic stops, when an officer makes a stop based on probable cause that a traffic violation has occurred or was occurring. See Dayton v.Erickson (1996), 76 Ohio St.3d 3, syllabus. When a police officer has probable cause to believe that a traffic violation has occurred or was occurring, a stop is constitutional even if the officer's motive in conducting the stop is pretextual. Id.
Probable cause is warranted when the known facts and circumstances are sufficient for a reasonable person to believe that a crime has been committed. See Ornelas v. United States (1996),517 U.S. 690, 696, 134 L.Ed.2d 911, 918. The determination of whether probable cause existed for a traffic stop is a mixed question of law and fact; therefore, this Court will review the determinationde novo. State v. Gibson (July 7, 1999), Lorain App. No. 97CA006967, unreported, at 4.
Defendant was charged with violating R.C. 4511.33(A). Essentially, R.C. 4511.33(A) mandates that a person drive a vehicle within a single marked lane and avoid any abrupt movements, such as weaving, until these movements can be made with safety. R.C. 4511.33(A); see, also, State v. Mittiga (July 3, 1996), Summit App. No. 17616, unreported, at 4. Defendant has asserted that the State failed to produce sufficient evidence that Trooper Sheppard observed him for a significant time period and that his weaving was substantial.
Although Defendant has insisted that his weaving was miniscule, this Court disagrees. Trooper Sheppard's observation of Defendant's vehicle traveling eight to ten inches over the centerline and his constant swaying for over one mile is a substantial impairment justifying a traffic stop. See, e.g.,State v. Myers (Jan. 7, 1998), Summit App. No. 18292, unreported, at 7-8. Furthermore, this Court recognizes that an officer's observation of someone weaving within his own lane is justification for a traffic stop. Cuyahoga Falls v. Morris (Aug. 19, 1998), Summit App. No 18861, unreported, at 4, citing State v.Williams (1993), 86 Ohio App.3d 37, 43. Based on Trooper Sheppard's observation of Defendant traveling over the centerline and his continuous weaving, he had both a reasonable suspicion of criminal activity and probable cause to stop Defendant's vehicle. Accordingly, Defendant's traffic stop was not improper, and his first assignment of error is overruled.
B. Assignment of Error Two
 The Court erred in not granting the motion to suppress where Defendant was questioned without being advised of his Miranda rights.
 In his second assignment of error, Defendant has argued that the results of his field sobriety tests and any statements should be suppressed because he was not informed of his Miranda rights when Trooper Sheppard detained him. This Court disagrees.
The Fifth Amendment to the United States Constitution provides persons with a privilege against compelled self-incrimination. Pursuant to Miranda v. Arizona (1966),384 U.S. 436, 471-472, 16 L.Ed.2d 694, 722, an individual must be advised of his or her constitutional rights when law enforcement officers initiate questioning after that person has been taken into custody or otherwise deprived of his or her freedom in any significant way. Once the police begin a custodial interrogation, they must use procedures to warn defendants of their right to remain silent and their right to counsel. Id.
Miranda procedures are only invoked by a formal arrest or an equivalent restraint on a person's freedom of movement. SeeOregon v. Mathiason (1977), 429 U.S. 492, 494, 50 L.Ed.2d 714,719. The United States Supreme Court has held that individuals who are temporarily detained pursuant to roadside traffic stops are not "in custody" for Miranda purposes. Berkemer v. McCarty
(1984) 468 U.S. 420, 440, 82 L.Ed.2d 317, 334-35. A person detained at a traffic stop is not "in custody" for Miranda
purposes until he or she has been formally arrested or subjected to the function equivalent of a formal arrest. Moreover, it is well settled that the non-verbal results of field sobriety tests are not self-incriminating statements. State v. Henderson (1990),51 Ohio St.3d 54, 57. Therefore, the trial court was correct in denying Defendant's motion to suppress the results of his field sobriety tests.[1] Defendant's second assignment of error is overruled.
C. Assignment of Error Three
 Defendant was denied due process of law and his right to present a defense when the court disallowed certain testimony by defense witness Mark Gardner.
 In his third assignment of error, Defendant has argued that the trial court's limitation of Mark Gardner's testimony precluded him from presenting a defense; therefore, resulting in an unfair trial. Essentially, Defendant has asserted that Mr. Gardner would have testified as an expert on the accuracy of field sobriety tests and that the exclusion of this evidence was erroneous. This Court disagrees.
In reviewing a trial court's decision to exclude expert testimony, this Court shall not overturn a decision absent a showing of a trial court's abuse of discretion. See State v.Bresson (1990), 51 Ohio St.3d 123, 129. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Id. Evid. R. 702 sets forth the following requirements for when a witness may testify as an expert:
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 (C) The witness' testimony is based on reliable scientific, technical, or other specialized information.
* * *
 It is important to note that the trial court, as well as the State, admitted that Mr. Gardner was an expert on predicting breath alcohol concentration, but the issue of alcohol content was not relevant to the case at bar. The trial court also concluded that Mr. Gardner was trained to administer the test and could explain the proper procedure to the jury.
Defendant has asserted that Mr. Gardner had the necessary training and expertise to offer an opinion regarding the reliability of field sobriety tests. The transcript reveals that Mr. Gardner tested his opinion on people in an instruction course and at various social settings, i.e., parties, bars, restaurants, but did not test his theory in a controlled setting. None of these settings involved an operation of a vehicle while under the influence of alcohol. Based on his lack of scientific procedures, the trial court found that Mr. Gardner failed to establish that he was an expert on the accuracy of field sobriety tests. This Court concludes that the trial court's determination that Mr. Gardner was not an expert in this particular case was not unreasonable.
D. Assignment of Error Four
 Defendant was denied a fair trial when the court would not strike Trooper Sheppard's testimony concerning his opinion from the tests he administered.
 In his fourth assignment of error, Defendant has asserted that the trial court should not have allowed Trooper Sheppard to testify concerning his observation of the field sobriety tests. In Bresson, the Ohio Supreme Court held that "a properly qualified officer may testify at trial regarding a driver's performance on the horizontal gaze nystagmus test because it pertains to the issues of probable cause to arrest and whether the driver was operating a vehicle while under the influence of alcohol." State v. Bresson (1990), 51 Ohio St.3d 123, syllabus. Because the HGN test is objective in nature, it does not require expert interpretation; therefore, objective manifestations of insobriety, personally observed by the officer, are always relevant where the defendant's physical condition is in issue. State v. Nagel (1986), 30 Ohio App.3d 80, 80. The Court further noted in Bresson that the HGN test is similar to other field sobriety tests, which are admissible without expert testimony. See Bresson, 51 Ohio St.3d at 127. Based on the foregoing, this Court concludes that field sobriety tests are reliable and that a properly qualified officer may testify at trial regarding the test results in determining whether the driver is under the influence of alcohol.
In the case at bar, Trooper Sheppard has been employed by the Ohio State Highway Patrol for eight years. During this time, he has received training specifically on conducting DUI traffic stops and is certified as an instructor on detecting individuals under the influence of alcohol. It appears from the record that Defendant argued that Trooper Sheppard was not experienced and, therefore, did not properly administer the HGN and field sobriety tests. Specifically, he challenged the location and the fact that Trooper Sheppard did not know at what degree the white of the eye is no longer visible.
Defendant's expert, Mr. Gardner, testified that administering the HGN test in a patrol car would affect the results because of the restricted space; however, the transcript of the trial court does not reveal any problems. For example, Mr. Gardner asserted that the use of a flashlight made the results inaccurate. Although there was a small reflection from the flashlight into Defendant's eyes, Trooper Sheppard testified that it did not impair Defendant's ability to see the pen or Trooper Sheppard's ability to see his eyes. Defendant also claimed the procedure was improper because his hands were at his side and the training manual mentioned that his hands should be on his chin; however, Trooper Sheppard explained that this reference was only a recommended safety precaution and not a regulation.
In his testimony, Mr. Gardner explained that, according to the training manual, the other field sobriety tests should be administered on a clean, dry, level surface. Because the tests were conducted on a slight down grade, Defendant argued the test results were inaccurate. A review of the transcript reveals that Mr. Gardner did not visit the location of the traffic stop. Furthermore, Trooper Sheppard testified that he was able to demonstrate the tests without any difficulty.
Based on the above testimony, the trial court found that Trooper Sheppard had the necessary training and experience to reach a conclusion concerning the results of Defendant's field sobriety tests. In turn, this Court concludes that the trial court did not abuse its discretion. Therefore, Defendant's fourth assignment of error is overruled.
E. Assignment of Error Five
 The court erred in allowing evidence of Defendant's refusal to take the test and in instructing the jury to consider this refusal.
 In his fifth assignment of error, Defendant has argued that his constitutional rights were violated by the admission of his refusal to take a chemical test. Essentially, Defendant has asserted that the admission of his refusal is incriminating and compelled testimony.[2] This Court disagrees.
The Supreme Court of Ohio has held that physical sobriety tests are not testimonial or communicative acts that are protected by the constitutional privilege against self-incrimination. SeePiqua v. Hinger (1968), 15 Ohio St.2d 110, paragraph one of the syllabus. The State may offer into evidence the fact that a defendant refused to take a chemical test and not infringe on his constitutional rights. See Maumee v. Anistik (1994), 69 Ohio St.3d 339,342. In addition, this evidence can be used against a defendant at trial, in which the state may refer to the refusal in its closing argument. State v. Friedt (Jan. 7, 1998), Medina App. No. 2674-M, unreported, at 6. It is permissible to instruct a jury that the defendant's refusal is evidence of his intoxication at the time of the test as long as the instructions are not one-sided. See Maumee, supra, at 343-344.
In reviewing the transcript, this Court concludes that the trial court properly allowed the admission of Defendant's refusal into evidence. The trial judge correctly instructed the jury that they "may, but are not required to, consider" the evidence.Maumee supra, at 344. Therefore, Defendant's fifth assignment of error is overruled.
F. Assignment of Error Six
 Defendant was denied due process of law when the court overruled his motion for judgment of acquittal.
 In his sixth assignment error, Defendant has argued that the trial court erred when it ruled that the State made a "prima facia" case because the evidence was insufficient to prove him guilty beyond a reasonable doubt. Defendant has asserted that the evidence of the field sobriety tests, odor of alcohol, Trooper Sheppard's testimony, and his erratic driving were not enough for the State to prove beyond a reasonable doubt that he was under the influence of alcohol. This Court disagrees.
"Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt."State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. "An issue will be presented to the jury * * * if the evidence, viewed in the light most favorable to the government, is such that `a reasonable mind might fairly find guilt beyond a reasonable doubt[.]'" Id. at 263; see, also, State v. Thompkins (1997),78 Ohio St.3d 380, 386 ("`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law").
Section 4511.19(A)(1) of the Ohio Revised Code provides that: "No person shall operate any vehicle * * * [while] under the influence of alcohol[.]" Defendant has argued that the State failed to prove beyond a reasonable doubt that Defendant was driving under the influence of alcohol. Trooper Sheppard testified that prior to the traffic stop, he observed Defendant continuously weaving. At one point, Defendant crossed the centerline eight to ten inches. Trooper Sheppard also smelled a mild odor of alcohol when he initiated the traffic stop. The trial court concluded that Trooper Sheppard was properly qualified to testify concerning Defendant's performance of the field sobriety tests. Trooper Sheppard testified that Defendant showed all six indicators of the HGN test and failed the other three field sobriety tests. Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the evidence was sufficient to prove Defendant was under the influence of alcohol. Defendant's sixth assignment of error is overruled.
G. Assignment of Error Seven
 Defendant's prosecution and sentence [are] barred by the double jeopardy clauses of the Ohio and Federal Constitutions.
 In his seventh assignment of error, Defendant has asserted that the prosecution and the imposition of the trial court's license suspension placed him in double jeopardy. Specifically, Defendant has asserted that his sentence is a second punishment. This Court disagrees.
The Fifth Amendment of the United States Constitution provides that "[n]o person shall * * * be subject for the same [offense] to be twice put in jeopardy of life or limb."[3]
The Ohio Supreme Court has held that the Double Jeopardy clause does not preclude criminal prosecution for driving under the influence, subsequent to an administrative license suspension (A.L.S.) arising out of the same arrest. State v. Gustafson
(1996), 76 Ohio St.3d 425, paragraph one of the syllabus. Although the ALS is remedial in nature, for double jeopardy purposes, it "ceases to be remedial and becomes punitive in nature to the extent the suspension continues subsequent to [an] adjudication and sentencing for [a] violation of R.C. 4511.19."Id, paragraph three of the syllabus. At this point, the continued recognition of an A.L.S. suspension would violate the Double Jeopardy clause. Id, paragraph four of the syllabus. Accordingly, a trial court must terminate an A.L.S. suspension at the time of Defendant's criminal sentencing for a conviction under R.C. 4511.19. See id, paragraph five of the syllabus; see also, R.C. 4511.191(K)[4].
In the case at bar, Defendant received an A.L.S. license suspension for a term of one year, which started on the date of his arrest. He was also sentenced to a license suspension for a term of two years as a result of his criminal conviction, which started on the date of his sentencing. The transcript of his sentencing hearing revealed that the trial court allowed credit for Defendant's A.L.S. suspension; however, the trial court did not expressly terminate the A.L.S. suspension. Based on the language in Gustafson, the trial court should have terminated Defendant's A.L.S. suspension upon his conviction of driving under the influence of alcohol. This Court concludes that the continuation of Defendant's A.L.S. suspension placed him in double jeopardy; therefore, this aspect of Defendant's argument is well taken.
This conclusion, however, does not automatically lead this Court to conclude that Defendant's two-year suspension must be vacated. R.C. 4507.16 sets forth the mandatory requirements that a trial court must follow when a defendant has violated R.C.4511.19(A). Specifically, R.C. 4507.16(B)(2) mandates a trial court to suspend a person's license "for not less than one year nor more than five years[,]" if, within six years of the offense, the offender has been convicted of or plead guilty to one violation of R.C. 4511.19(A) or (B). In the case at bar, Defendant had one prior conviction for driving under the influence of alcohol within the past six years. Thus, the trial court did not err in suspending his license for two years.
As noted supra, the trial court's failure to terminate the A.L.S. suspension placed Defendant in double jeopardy. To this extent, the trial court's decision is in error. However, any error in this case may be remedied by the termination of the A.L.S. suspension retroactive, to the date of Defendant's DUI conviction.
 III.
Defendant's assignments of error one through six are overruled. His seventh assignment of error is well taken. This Court affirms the trial court's judgment with respect to his DUI conviction; however, this cause is remanded to the trial court with instructions to issue an order to the Bureau of Motor Vehicles terminating Defendant's A.L.S. suspension, retroactive to the date of his DUI conviction.
Judgment Affirmed and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Wadsworth Municipal Court, County of Medina, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ BETH WHITMORE FOR THE COURT
SLABY, P.J. and CARR, J. CONCUR
[1] Additionally, this Court notes that Defendant has failed to point to statements in the record that he believes should have been suppressed.
[2] Defendant also raised an argument concerning double jeopardy, which will be addressed later in this opinion.
[3] Section 10, Article 1 of the Ohio Constitution provides that "[n]o person shall be twice put in jeopardy for the same offense." This Court only makes reference to the Federal Double Jeopardy Clause because the two clauses are coextensive.
[4] Former R.C. 4511.191(K) in effect when Defendant was arrested, provided in part:
 A suspension of the driver's [license] * * * shall be terminated by the registrar upon receipt of notice of the person's entering a plea of guilty to, or of the person's conviction after entering a plea of no contest under Crim. R. 11 to, operating a vehicle while under the influence of alcohol[.]
 Effective Sept. 16, 1998, the Ohio Legislature amended R.C. 4511.191(K) to include convictions at trial.