DECISION AND JUDGMENT ENTRY
This is an appeal from a Scioto County Common Pleas Court judgment of conviction and sentence. The jury found Robert Lovely, defendant below and appellant herein, guilty of: (1) aggravated burglary, in violation of R.C. 2911.11; (2) attempted murder in violation of R.C. 2923.02/2903.02; and (3) two (2) counts of attempted felonious assault, in violation of R.C. 2923.02/2903.11. The following errors are assigned for our review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN INSTRUCTING THE JURY ON ATTEMPTED FELONIOUS ASSAULT AFTER DISMISSING AN INDICTMENT FOR FELONIOUS ASSAULT, BECAUSE THE CHARGE OF ATTEMPTED FELONIOUS ASSAULT WAS BARRED BY DOUBLE JEOPARDY."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED BY REFUSING TO INSTRUCT THE JURY ON BURGLARY AS A LESSER INCLUDED OFFENSE OF AGGRAVATED BURGLARY."
THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN SENTENCING APPELLANT BECAUSE THE SENTENCES IMPOSED WERE CONTRARY TO LAW."
In the pre-dawn hours of October 31, 1999, Bob Bratchett rose, got ready for work and left his home on Micklethwaite Road in Portsmouth to go to the "A Plant" in nearby Piketon. He left his wife, Bobbie Bratchett, and two sons, 21 year old Robbie and 18 year old Matthew, at home asleep. Shortly after Bob Bratchett left, Mrs. Bratchett heard a noise downstairs. Thinking it might be her husband, she went back to sleep. Several moments later she heard noise upstairs but, thinking it was one of her sons, she disregarded this noise as well. Shortly thereafter, someone then walked into her bedroom. Mrs. Bratchett came out of a "half sleep" to see a strange man standing in her room and holding a large knife at a "90 degree angle."
The stranger put the knife to her throat and said "I'm going to kill you, you fucking bitch." Afraid for her life, Mrs. Bratchett told the stranger that she had some money in the house and offered to give it to him. The man replied that he did not care. Running out of options, Mrs. Bratchett screamed to warn her children of the impending danger and then tried to fight off the intruder. Matthew Bratchett came out of his room almost immediately and threw himself at his mother's attacker. The man turned and swiped at Matthew with the knife leaving a big gaping cut from Matthew's "back shoulder to his arm pit area." Robbie Bratchett then burst out of his room, punched the intruder and began wrestling with him for control of the knife.
All four continued struggling in the upstairs hallway, down the stairs and eventually ended up outside where Mrs. Bratchett screamed for help from their neighbors. At one point the intruder pinned Robbie Bratchett to the ground. This prompted the younger brother (Matthew) to grab the man's knife and stab him in the back. The intruder then let go of Robbie and he began to run down the hill. At first, the boys pursued him, but eventually gave up the chase and returned to assist their mother. Police arrived a short time later and began to search the area. They found the assailant on a nearby street crouched between a house and garage. Robbie viewed the suspect and identified appellant as the man with whom they had fought and expelled from their home. A gift certificate given to the Bratchett family was found in the assailant's pants pocket.[2]
On November 8, 1999, the Scioto County Grand Jury returned an indictment charging appellant with one (1) count of aggravated burglary in violation of R.C. 2911.11(A)(1) and three (3) counts of attempted murder in violation of R.C. 2923.02/2903.02. He pled not guilty to each of these charges. A second indictment was returned on March 28, 2000, charging appellant with three (3) counts of felonious assault for the same incident. These charges were later dismissed as being in violation of appellant's "speedy trial" rights.
The matter proceeded to a jury trial over several days in May of 2000, at which time Mrs. Bratchett and her sons recounted the events surrounding the morning of the break-in and subsequent attack. Appellant offered little evidence in his own defense. Prior to the case being given to the jury, the parties engaged in considerable debate over the proposed jury instructions. Defense counsel asked that the court instruct the jury on the offense of burglary as a lesser included offense of aggravated burglary. The State "strenuously" objected and the trial court agreed that the evidence did not support that instruction.
A somewhat more problematic issue for the trial court was whether the jury should be instructed on felonious assault, or attempted felonious assault, as a lesser included offense of the crime of attempted murder. It is clear from the record that the trial court did extensive research on this issue and spent considerable time studying the question. After reciting a litany of case law, the court concluded that it would not instruct the jury on felonious assault but would instruct the jury on attempted felonious assault.
The jury returned verdicts finding appellant guilty on counts one and two of the indictment (aggravated burglary and attempted murder of Mrs. Bratchett) and guilty of the lesser included offenses of attempted felonious assault on counts three and four of the indictment (relative to the attack on Robbie and Matthew Bratchett). At sentencing it was revealed that these offenses had been committed while appellant was on community control from a fourth degree felony theft conviction in Franklin County. In light of that fact, the court concluded that appellant "pose[d] a great likelihood of committing future crimes." The court also found that he had committed the worst form of these offenses given the facts and circumstances surrounding this incident. Thus, the trial court sentenced appellant to ten (10) years in prison on the aggravated burglary count, eight (8) years in prison on the attempted murder count, and three (3) years on each of the two attempted felonious assault counts. The court ordered that the prison terms for the aggravated burglary and attempted murder counts would run consecutively to one another, and that the terms for the two (2) attempted felonious assault counts would run concurrently with each other, but consecutive to those imposed on the other counts, for a total sentence of twenty-one (21) years imprisonment. Judgment to that effect was entered on May 18, 2000, and this appeal followed.
 I
Appellant's first assignment of error involves the trial court's decision to instruct the jury on attempted felonious assault as a lesser included offense of attempted murder. Appellant argues that the dismissal of the second indictment, which charged him with the three extra counts of felonious assault, constituted a violation of his "double jeopardy" rights. We disagree.
Our analysis begins with the Fifth Amendment to the United States Constitution which states that nobody shall twice be put in jeopardy of life or limb for the same offense. This guarantee is equally applicable to the states through the auspices of the Fourteenth Amendment Due Process Clause. See Benton v. Maryland (1969), 395 U.S. 784, 794,23 L.Ed.2d 707, 716, 89 S.Ct. 2056, 2062; North Carolina v. Pearce (1969),395 U.S. 711, 717, 23 L.Ed.2d 656, 664, 89 S.Ct. 2072, 2076; also seeState v. Tolbert (1991), 60 Ohio St.3d 89, 91, 573 N.E.2d 617, 619.[3]
The Double Jeopardy Clause protects against successive prosecutions for the same offense after acquittal or conviction and against multiple punishments for the same crime. Monge v. California (1998), 524 U.S. 721,727-728, 141 L.Ed.2d 615, 623, 118 S.Ct. 2246, 2250; United States v.Dixon (1993), 509 U.S. 688, 696, 125 L.Ed.2d 556, 567, 113 S.Ct. 2849,2855; also see State v. Thomas (1980), 61 Ohio St.2d 254, 259,400 N.E.2d 897, 902.
The gist of appellant's argument is that because a second indictment was lodged, which charged him with felonious assault counts and which was eventually dismissed, the Double Jeopardy Clause protects appellant from being convicted of attempted felonious assault as a lesser included offense of the attempted murder charges. He cites as support for that argument the case of Brown v. Ohio (1977), 432 U.S. 161, 53 L.Ed.2d 187,97 S.Ct. 2221, wherein the United States Supreme Court held that the Double Jeopardy Clause forbade successive prosecutions, and cumulative punishment, for greater and lesser offenses.
We do not dispute the Brown holding as an abstract proposition of law, but question whether it may be applied to the cause sub judice. We note that only one prosecution has occurred in this case and only a single punishment for each of the crimes is at issue here. Jeopardy did not attach when the second indictment was handed down and a subsequent dismissal of that indictment may not be equated to a trial on the merits. Moreover, nothing in our Fifth Amendment jurisprudence forbids a jury charge on a lesser included offense. Accordingly, we conclude that no double jeopardy issue is implicated in the case sub judice. Consequently, we overrule appellant's first assignment of error.
 II
In his second assignment of error appellant asserts that the trial court erred by refusing his request to instruct the jury on burglary as a lesser included offense of aggravated burglary. Again, we disagree with appellant.
It is settled law that an instruction on a lesser offense is required only when the evidence at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser included offense. See State v. Robb (2000), 88 Ohio St.3d 59, 74, 723 N.E.2d 1019,1039; State v. O'Neal (2000), 87 Ohio St.3d 402, 412, 721 N.E.2d 73, 85;State v. Thomas (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, at paragraph two of the syllabus. Aggravated burglary occurs when one, inter alia, trespasses in an occupied structure to commit a criminal offense and inflicts physical harm on another. R.C. 2911.11(A)(1). Burglary, on the other hand, is simply the trespass into an occupied structure to commit a criminal offense. R.C. 2911.12(A). The key difference between these crimes is obviously the element of infliction of physical harm.[4]
In the case sub judice, the uncontroverted evidence indicates that after he broke into the Bratchett home, appellant inflicted substantial physical harm to members of the Bratchett family. Mrs. Bratchett and her son Matthew both testified about the stab wounds they received. The prosecution introduced medical records to substantiate their testimony. Obviously, the trial court concluded that the jury could not reasonably disregard that evidence and acquit appellant on the aggravated burglary charge. The court thus denied appellant's request to instruct on the lesser included offense of burglary. We find no error in that decision and, accordingly, we overrule appellant's second assignment of error.
 III
Appellant's third assignment of error asserts that the trial court erred by imposing a maximum prison sentence and in making those sentences run consecutively to one another. We are not persuaded.
At the outset we note that appellant was sentenced to the maximum possible prison term on only one of the offenses for which he was convicted. The crime of aggravated burglary is a first degree felony, R.C. 2911.11(B), as is the crime of attempted murder. R.C. 2923.02(E). Available prison sentences for those crimes range from three to ten years. R.C. 2929.14(A)(1). The trial court sentenced appellant to the ten year maximum prison term on his aggravated burglary conviction, but sentenced appellant to only an eight year prison term for attempted murder.
The crime of attempted felonious assault is a third degree felony, R.C. 2923.02(E)/2903.11(B), and the trial court could have sentenced appellant to as much as five years in prison on each conviction. See R.C.2929.14(A)(3). Appellant received, however, only three year sentences. Thus, his sentence on the aggravated burglary conviction is the only maximum sentence that he actually received.
That being the case, we note that the provisions of R.C. 2929.14(C) prohibit trial courts from imposing maximum prison terms unless the offender is determined to fall into one of four classifications. SeeState v. Holsinger (Nov. 20, 1998), Pike App. No. 97CA605, unreported;State v. Kauff (Nov. 9, 1998), Meigs App. No. 97CA13, unreported. Those classifications include offenders who (1) commit the worst form of the offense; (2) pose the greatest likelihood of committing future crimes; (3) are certain major drug dealers; and (4) are certain repeat violent offenders. R.C. 2929.14(C); also see State v. Borders (Aug. 7, 2000), Scioto App. No. 00CA2696, unreported; State v. Riggs (Sep. 13, 1999), Washington App. No. 98CA39, unreported; State v. Goff (Jun. 30, 1999), Washington App. No. 98CA30, unreported. When imposing a maximum sentence, the trial court must state its reasons for doing so on the record at the sentencing hearing. R.C. 2929.19(B)(2)(d); also see Statev. Lenegar (Feb. 3, 1999), Vinton App. No. 99CA521, unreported; State v.Patterson (Sep. 21, 1998), Washington App. No. 97CA28, unreported. Our review of the record reveals that the trial court readily complied with these requirements when it imposed the maximum prison sentence on appellant for aggravated burglary.
At the sentencing hearing the court expressly noted that it found appellant to have committed "one of the worst forms of the offen[se]" and that he posed "a great likelihood of committing future crimes." These findings were then carried over into the final judgment entry of conviction and sentence. A review of the record certainly supports those findings. First, it was uncontroverted that appellant broke into the Bratchett home while he was on community control sanctions from a theft conviction in Franklin County. The court cogently noted that he "obviously" had not "responded favorably" to those sanctions. Moreover, the court gave the following explanation as to why it found this to be one of the worst forms of the offense that could be committed:
 "I find that this charge and offence [sic] of aggravated burglary is one of the worst forms of the offence [sic] that I feel could be committed. An occupied dwelling was entered in the night time at a time when people were likely to be in that residence. One of the first things upon entering that residence was that you obtained a weapon. I find that you could have stayed downstairs, stolen property and left; however, you chose to go upstairs where people were likely to be sleeping at the time.
 You confronted the people upstairs, you made threats of killing people and you inflicted injury on more than one victim."
We agree with the trial court's observations and we further note that the injuries inflicted by appellant were severe. For these reasons, we find no error in the trial court's decision to impose the maximum possible prison sentence for aggravated burglary.
Appellant also argues that the trial court should not have ordered consecutive sentences.[5] The provisions of R.C. 2929.14(E)(4) state, in pertinent part, as follows:
 "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
This statute sets out a "tri-partite procedure" for imposing consecutive prison sentences: first, the court must find that consecutive sentences are "necessary" to protect the public or to punish the offender; second, the court must find that the proposed consecutive sentences are "not disproportionate" to the seriousness of the offender's conduct and the "danger" that the offender poses; and third, the court must find the existence of one of the three enumerated circumstances in sub-parts (a) through (c). State v. Haugh (Jan. 24, 2000), Washington App. No. 99CA28, unreported. The findings required by this statute must be affirmatively set forth in the trial court's judgment or the imposition of consecutive sentences will be deemed reversible error. See State v.Brice (Jun. 9, 1999), Lawrence App. No. 98CA24, unreported; State v.Volgares (May 17, 1999), Lawrence App. No. 98CA6, unreported; State v.Smith (Mar. 17, 1999), Meigs App. No. 98CA02, unreported. With these principles in mind, we turn our attention to the sentencing entry below.
The May 18, 2000, judgment entry explicitly provides that consecutive sentences are necessary "to protect the public from future crime" and to adequately punish appellant for the crimes he had committed. The court also determined that such punishment is "not disproportionate" to the seriousness of [appellant's] conduct and the danger [he] poses to the public." Finally, the court noted that appellant committed the offenses while he was on community control sanctions. This constitutes sufficient compliance with the R.C. 2929.14(E)(4) requirements.
This does not end our inquiry, however. In addition to R.C. 2929.14, the trial court must also comply with R.C. 2929.19(B)(2)(c) and explain its reasons for imposing consecutive sentences. The requirement that a court give its reasons for electing to impose consecutive sentences is separate and distinct from the duty to make the findings required by R.C. 2929.14(E)(4). See State v. Hiles (Nov. 6, 2000), Hocking App. No. 99CA23, unreported; State v. Brice (Mar. 29, 2000), Lawrence App. No. 99CA21, unreported. Thus, after a sentencing court has made the required findings under R.C. 2929.14(E)(4), the court must then justify those findings by identifying specific reasons supporting the imposition of the consecutive prison terms. Hiles, supra; also see State v. Hurst (Mar. 7, 2000), Franklin App. No. 98AP-1549, unreported; State v. Winland (Jan. 26, 2000), Wayne App. No. 99CA29, unreported.
In the case sub judice, we conclude that the trial court satisfied these requirements by citing to those "reasons" already "stated on the record." This indicates that the court imposed the consecutive sentences in order to punish appellant for the particularly egregious nature of these crimes as was explained in the earlier cited colloquy.
We also note, as a final matter, that trial courts have historically enjoyed broad discretion in sentencing so long as the sentences imposed are within the statutorily prescribed limits. See Toledo v. Reasonover
(1965), 5 Ohio St.2d 22, 213 N.E.2d 179 at paragraph one of the syllabus. The same is generally true under the new sentencing guidelines provided, however, that the appropriate statutory procedures are followed and the correct statutory factors are properly weighed. See R.C.2929.12(A); also see generally State v. Thompson (Jul. 23, 1999), Washington App. No. 98CA10, unreported; State v. McConnaughey (Mar. 3, 1998), Athens App. No. 97CA39, unreported; State v. Thomas (May 18, 1998), Washington App. No. 97CA20, unreported; State v. Ditterline (Sep. 5, 1997), Washington App. No. 96CA47, unreported.[6] Moreover, appellate courts are now precluded from modifying or vacating a sentence unless it is "clearly and convincingly" shown that the sentence is not supported by the record, is contrary to law or that the trial court failed to follow the proper statutory procedures for imposing such sentence. See R.C. 2953.08(G)(1).
We conclude that in this case the sentences are supported by the record and are not contrary to law. We are also satisfied that the trial court considered the proper factors and entered appropriate findings to support the particular sentences. Therefore, we will not reverse the trial court's sentencing decisions absent an abuse of discretion. We note that an abuse of discretion is more than an error of law or judgment; it implies that the lower court's attitude is unreasonable, arbitrary or unconscionable. State v. Clark (1994), 71 Ohio St.3d 466, 470,644 N.E.2d 331, 335; State v. Moreland (1990), 50 Ohio St.3d 58, 61,552 N.E.2d 894, 898; State v. Adams (1980), 62 Ohio St.2d 151, 157,404 N.E.2d 144, 149. Generally, an abuse of discretion can be defined as a result that is so palpably and grossly violative of fact or logic that it evidences: not the exercise of will, but the perversity of will; not the exercise of judgment, but the defiance of judgment; not the exercise of reason, but, instead, passion or bias. Nakoff v. Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1, 3. Furthermore, reviewing courts should not substitute their judgment for that of the trial court in determining the most effective way to comply with the principles and purposes of the sentencing guidelines. See, generally, In re Jane Doe I
(1991), 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181, 1184; Berk v.Matthews (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301, 1308.
Having reviewed the record in the instant case, and considering the particular facts and circumstances of these crimes, we discern no error and no abuse of discretion in either the sentences imposed or the order that the sentences be served consecutively. For these reasons, we overrule appellant's third assignment of error.
Having reviewed all the errors assigned and argued in the briefs, and finding merit in none of them, we hereby affirm the trial court's judgment.
JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 ___________________________ Peter B. Abele, Presiding Judge
Harsha, J. Evans, J.: Concur in Judgment Opinion.
[2] Evidence adduced below reveals that the Bratchett family suffered some rather severe injuries during this attack. Mrs. Bratchett was initially treated at the Southern Ohio Medical Center where numerous stab wounds to her hands were cleaned and stabilized. She was then transferred to Riverside Memorial Hospital in Columbus and underwent "microsurgery" to repair tissue damage caused by the knife. Robbie sustained a broken hand (apparently from punching the assailant) and Matthew received numerous sutures to repair stab wounds he sustained during the melee.
[3] Section 10, Article I of the Ohio Constitution also gives similar protection. See State v. Gustafson (1996), 76 Ohio St.3d 425, 432,668 N.E.2d 435, 441; also see State v. Prokos (May 31, 2000), Athens App. No. 00CA02, unreported. We note, however, that in the instant case appellant is arguing only the federal constitutional Double Jeopardy protection.
[4] It is clear, of course, that burglary is a lesser included offense of aggravated burglary. See State v. Reznickchek (Dec. 18, 1998), Lucas App. No. L-97-1247, unreported; State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236, unreported; State v. Gregg (Oct. 26, 1992), Champaign App. No. 91-CA-15, unreported; State v. Blackmon (Jan. 2, 1992), Summit App. No. 15099, unreported.
[5] We acknowledge again that not all the sentences imposed on appellant were ordered to run consecutively. The two convictions for attempted felonious assault were to be served concurrently.
[6] This is somewhat different from the earlier "abuse of discretion" standard applied prior to the 1995 passage of Am.Sub.S.B. No. 2 which overhauled Ohio's felony sentencing laws. See 146 Ohio Laws, Part IV, 7136. By providing statutory standards for the exercise of discretion in R.C. 2929.11 through R.C. 2929.20, the Ohio General Assembly has now clearly defined that which is an abuse of discretion. See generally
Griffin Katz, Ohio Felony Sentencing Law (2000 Ed.) 653-654, § 9.16. The failure of a trial court to exercise its discretion within the detailed standards provided by the purposes, array of principles, factors, and presumptions means that the sentencing court has abused its discretion.